WILLIAM J. FLYNN, Plaintiff, *v.* NEW YORK WORLD-TELEGRAM CORPORATION and Another, Defendants.

Supreme Court, Bronx County, January 26, 1934.

*Abraham Wilson,* for the plaintiff.

*DeWitt, Van Aken & Moynihan [Macdonald DeWitt of counsel],* for the defendants.

COTILLO, J. The plaintiff moves for an order pursuant to rule 109 of the Rules of Civil Practice to strike out paragraphs of the defendants' answer numbered 5 to 28, inclusive, upon the ground that the defenses therein contained are insufficient in law, or, in the alternative, that said matter be stricken out pursuant to rule 103 of the Rules of Civil Practice upon the ground that the matter contained therein is irrelevant, redundant and unnecessary, or, in the alternative, that said matter be stricken out upon the ground that that portion of the pleading fails to comply with section 241 of the Civil Practice Act.

This action is an outgrowth of an editorial published by the New York *World-Telegram* and the *Evening Mail* commenting upon the suicide of Louis H. Willard, a witness before the joint legislative committee, known as the Hofstadter committee, and the investigation before it, commonly called the Seabury investigation. The complaint alleges that on the 25th day of April, 1933, the defendant maliciously published of and concerning the plaintiff the following " false, untrue and defamatory matter as an editorial " in the above named newspaper:

" WILLARD IS DEAD

" Louis H. Willard has committed suicide. Tragic close of a tragic chapter. Record of ruin, persecution, complete havoc made of a human life by the brutal selfishness of a holder of public office who used his official position first, to beggar his victim (according to sworn testimony); second, to blacken his character; third, to persuade a docile public prosecutor to drag the sufferer into court for further vengeance.

" The Seabury investigation disclosed nothing more poignant than the evidence tending to show that Bronx Commissioner of Public Works William J. Flynn, hounded Willard to a financial disaster that drove Mrs. Willard to suicide and Willard himself to attempt suicide. That evidence has never been refuted.

" The New York County district attorney's office has rarely been more disgracefully misused than when District Attorney Thomas C. T. Crain permitted Flynn to use it to prosecute Willard for perjury on testimony supplied by Flynn's agents.

" Public office at the service of personal greed and vindictiveness! The ' system ' hereabout has produced few uglier specimens of its workings, we think, than this record of the Willard case.

" Willard is dead. He lived to see himself completely acquitted of the perjury charge. He lived to hear a jury bring in a first ballot verdict of ' Not guilty,' following the brilliant defense presented by Irving Ben Cooper, formerly one of the Seabury staff attorneys.

" But Willard's courage was gone. Only four months after his wife's suicide his sister-in-law died by what he believed to be suicide caused by these heavy family troubles. Two nights ago he took poison, leaving a pathetic note, explaining that ' his ordeal had exhausted him ' and that he had ' gone to join his loved ones.'

" Willard is dead. But his character is cleared. His testimony stands.

" William J. Flynn and District Attorney Thomas C. T. Crain are alive and still secure in public office. No public authority

has molested them. No official influence has been exerted to disturb their tranquility.

"But how do this persecutor and this prosecutor look today in the light of the record that survives and exonerates the dead man?

"Do *they* stand cleared?"

Besides alleging the falsity of the above editorial the plaintiff further alleges "that by the aforesaid editorial the defendants meant and intended to mean and were understood in and about the City of New York, the Borough of Bronx and elsewhere as meaning that plaintiff used his official position and public office to ruin one Louis H. Willard; that plaintiff persecuted the said Willard and that plaintiff activated by unworthy, improper and illegal purposes and by the use of official connection and position, persecuted the said Willard, caused and/or influenced and/or induced and/or was the inducing cause of said Willard's suicide and/or death, and that plaintiff was responsible for and/or the inducing cause of the suicide and/or death of said Willard's wife and/or said Willard's sister-in-law.

"That by said editorial the defendant meant and intended to mean and were understood to mean that plaintiff was part of a political or other 'system' engaged in the persecution of individuals and particularly said Willard for the personal greed and aggrandizement of plaintiff, and that by the use of the word 'system' in the said editorial the defendants meant and intended to mean and were understood to mean that plaintiff was a part of and concerned in an illegal, oppressive combination, political or otherwise, which used its alleged power and/or its alleged influence to illegally and improperly persecute, harass, molest and otherwise injure the said Willard or other persons in the Borough of the Bronx and/or the City of New York."

To this complaint the defendants have interposed a voluminous answer. Besides admitting the publication of the editorial and the extensive circulation of the New York *World-Telegram* and *The Evening Mail* the defendants admit that in and by the aforesaid editorial they meant and intended to be understood by the readers thereof as meaning that, in the defendants' opinion based upon sworn testimony, the plaintiff had used his official position and public office to ruin one Louis H. Willard and that the plaintiff, actuated by unworthy, improper and illegal purposes and by use of official connection and position, had persecuted the said Willard and thereby caused and/or influenced the said Willard's suicide and the suicide of said Willard's wife.

The answer also sets up as a first separate defense the defense that all the statements of facts contained in said editorial were

and are true and all the comments contained in said publication were and are fair, made in good faith and without malice, and were fairly warranted by facts truly stated or referred to. The allegations of the first separate defense are also pleaded as a separate and partial defense and also as a separate and partial defense and in mitigation of damages. The defense in mitigation of damages also contains allegations that " prior to the date of the publication complained of in the complaint herein accounts of the matters and facts therein stated and referred to, and of the matters and facts in this separate and partial defense alleged, were published in newspapers printed in the City and State of New York and elsewhere," and that the substance of all the facts and matters stated and referred to in the publication complained of in the complaint herein, and of the facts hereinabove and in this separate and partial defense pleaded, were known to the defendants prior to the date of the publication complained of in the complaint herein, had theretofore been communicated to defendants by trustworthy persons and from trustworthy sources, were relied upon by defendants in making said publication, and were calculated to and did induce in the defendants the belief that all the statements of fact contained in said publication were true, and that all the comments thereon contained in said publication were fair and fairly warranted by facts truly stated or referred to.

The allegations upon which the defendants raised the issue of truth are set forth in the paragraphs numbered 5 to 28, which paragraphs are the subject of the plaintiff's attack on the answer.

Paragraphs numbered 5 to 28 of the answer set out in great detail what is alleged to be the facts of the Flynn-Willard controversy from its very inception down to the trial of Willard for perjury held in the Court of General Sessions in New York County. It particularizes in minute detail the testimony and information alleged to have been adduced at the hearings of the Hofstadter committee, proceedings held by the board of standards and appeals and the Willard trial. Rule 109 of the Rules of Civil Practice provides that the defense consisting of new matter may be stricken out when it appears from the face thereof that the new matter is insufficient in law. In an attack upon an answer under this section all the facts alleged in the defenses attacked must be taken as true. (*Cavanagh* v. *Hutchison*, 140 Misc. 178; *Burns* v. *Lopez*, 256 N. Y. 123.)

In view of the attitude assumed by our appellate courts in deeming all the facts to be conceded as true under this motion a comparison of the publication complained of with the facts pleaded as the first defense will show that if these facts are proven on the trial

to the satisfaction of the jury the truth of each of the libelous charges contained in said editorial will be established, viz., that the plaintiff did use his official position, *first*, to beggar Willard; *second*, to blacken his character; *third*, to persuade the district attorney of New York county to drag Willard into court on a false charge of perjury and thus drive Willard to suicide, and *fourth*, that Willard's being improverished by the plaintiff's use of his official position to beggar him drove Willard's wife to commit suicide. Truth is an absolute defense to a civil action for libel. (*Rodger* v. *American Kennel Club*, 131 Misc. 312; Newell Slander & Libel [4th ed.], p. 764.) In *Cafferty* v. *Southern Tier Publishing Co.* (226 N. Y. 87) our Court of Appeals, writing through the able pen of CRANE, J., in discussing a pleading similar to the one at bar, held: *" The libel law is not a system of technicalities, but reasonable regulations whereby the public may be furnished news and information, but not false stories about anyone. When the truth is so near to the facts as published that fine and shaded distinctions must be drawn and words pressed out of their ordinary usage to sustain a charge of libel, no legal harm has been done. * * * Whoever may read this opinion, of course, must understand that we are dealing solely with a question of law and the sufficiency of the words which the parties have put on paper to make out a defense if proved. The statements must not be accepted as any intimation of the facts, for we are dealing solely with a question of pleading."*

Therefore, that part of the plaintiff's motion seeking to strike out portions of the defendants' answer must be denied. The first alternative relief sought by the plaintiff's motion is for an order striking out the allegations in the paragraphs above under rule 103 of the Rules of Civil Practice upon the ground that the matter contained therein is irrelevant, redundant and unnecessary. Motions to strike out under this rule are addressed to the sound discretion of the court (*Dodge* v. *Campbell*, 223 App. Div. 471), and are not favored and will be denied unless the court can see that the allegations have no possible bearing on the subject-matter (*Barnett* v. *Euromerican Cellulose Products Corp.*, 135 Misc. 675). In view of my ruling on the motion to strike out it cannot be clearly seen that the allegations are unnecessary or that they are irrelevant or redundant.

As to the second alternative relief asked, the facts as pleaded are such as to warrant a denial to strike out, and the answer sufficiently conforms with section 241.

I fail to see why the plaintiff should have fear and claim to be prejudiced by the defendants going into detail in their defense of truth. As a matter of fact the plaintiff should be thankful

for the conduct of defendants in particularizing the facts upon which they base their defense of justification and truth so that he will not be surprised at the trial.

No prejudice can be claimed by the plaintiff by the retention of the portion sought to be stricken out, while an omission of the facts upon which defendants rely to establish their defense might result in the exclusion of the evidence of such facts on trial and thus work irreparable injury to defendants.

Motion denied.