Matthew J. Jasen, J.
This is a motion by plaintiff under rule 109 of the Rules of Civil Practice to strike out certain affirmative defenses contained in the answer of defendants on the ground that it appears on the face of each of the defenses that they are insufficient in law.
From the pleadings it appears that plaintiff and defendant Pease Oil Company entered into certain contractual arrangements whereby the plaintiff sold and delivered to defendant Pease certain gasoline and petroleum products between November 20,1956 and August 29,1960, and there remains unpaid the *438 sum of $164,464.82. The pleadings do not include a copy of any contracts nor do they set out the particulars of the contracts, nor is it clear that a written contract was entered into between the parties.
Plaintiff alleges for its second, third, fourth and fifth causes of action that defendants James 0. Porter, Altadale Corporation and Cintra Realty Corporation at certain times during the course of dealings between plaintiff and defendant Pease, executed and delivered to plaintiff guarantees. The guarantees of Cintra and Altadale were secured by mortgages on real property. The substance of each of the guarantees was a promise by each guarantor to pay on demand the full purchase price of the merchandise sold and delivered by plaintiff to Pease. A copy of the guarantee agreement between defendant Porter and plaintiff is attached to the complaint.
Plaintiff alleges demand for payment from defendant Pease and from each of the defendant guarantors, and a refusal on the part of each of the defendants to do so. Judgment in the amount of $164,464.82 and interest is sought, together with foreclosure of the mortgages which secure the various guarantees and the appointment of a receiver of rents and profits of the parcels of real estate mortgaged.
Defendants in their answer make various denials, introduce a series of affirmative defenses and counterclaims.
The first affirmative defense, paragraphs Eleven through Twenty-five in the defendants’ answer, alleges the sale and delivery of certain goods to be contrary to public policy, null, void and unenforeible as a violation of section 1 of the Act of Congress of July 2, 1890 (26 U. S. Stat. 209, as amd.; U. S. Code, tit. 15, § 1) commonly referred to as the Sherman AntiTrust Act; the second affirmative defense, paragraphs Twenty-six and Twenty-seven, alleges violation of section 2 of the same act; the third affirmative defense, paragraphs Twenty-eight and Twenty-nine in the answer alleges violation of the Federal law commonly known as the Clayton Anti-Trust Act (38 U. S. Stat. 731; U. S. Code, tit. 15, § 14); the fourth affirmative defense, paragraphs Thirty through Thirty-four alleges violation of the Federal law commonly known as the Robinson-Patman Price Discrimination Act (49 U. S. Stat. 1526); the fifth affirmative defense, paragraphs Thirty-five and Thirty-six alleges violation of section 340 of the General Business Law, commonly known as the Donnelly Anti-Trust Act; the tenth affirmative defense, paragraph Forty-four, alleges that plaintiff, a foreign corporation, was not qualified to do business in the State of New York; the twelfth affirmative defense, paragraphs Forty-eight and *439 Forty-nine, alleges that Altadale Corp. and Cintra Realty Corp. had no authority to execute the guarantees and mortgages.
Plaintiff moves to strike these defenses under rule 109 of the Rules of Civil Practice.
Any decision on the question of the sufficiency of an affirmative defense under rule 109 must naturally he limited to the facts which appear in the pleadings (Commissioners of State Ins. Fund v. Farrand Opt. Co., 295 N. Y. Y. 493). The facts alleged in the defenses attacked must, for the purposes of this motion, be deemed true (Flynn v. New York World-Tel. Corp., 150 Misc. 241; Burns v. Lopez, 256 N. Y. 123).
Neither plaintiff nor defendants have seen fit to include as part of their pleadings a copy of the contract or contracts which the parties allegedly made. Nor has either felt compelled to set out the substance thereof. Thus a defense of illegality of contract might be allowed to stand since this court does not have before it sufficient pleadings to determine whether or not as a matter of law the allegations of illegality are insufficient. However, we need not decide the matter on that ground for a careful reading of the answer of defendants fails to reveal any allegation that the contract as such is illegal. There is, at best, an allegation of unrelated illegal agreements between plaintiff and some of its distributors not party to this action.
Defendants in their brief presented to this court state that “ All distributors of plaintiff’s products including defendant Pease, were required to conspire to fix prices, * * * with respect to plaintiff’s products. ’ ’ However, even the most liberal construction of defendants’ answer fails to convince the court that paragraphs Twenty, Twenty-one, Twenty-two, Twenty-three and Twenty-four of the answer can be so construed as to charge plaintiff, defendant Pease, or for that matter any other person, with complicity in an expressed conspiracy as part of the contract in issue, to violate any of the various antitrust acts.
A clear distinction must be made between contracts which embody in their essential terms a conspiracy to violate the antitrust acts and contracts, the essentials of which are legal but which may incidentally involve antitrust violations which are collateral to the contract.
An affirmative defense charging violation of the antitrust laws must be struck down upon motion to dismiss unless the contract for the sale of goods is alleged to be an integral part of the illegal conspiracy. The contract must in itself carry out the terms of the illegality and be part and parcel of the violations to allow the defense to stand. This is made abundantly *440 clear by the United States Supreme Court in deciding the recent case of Kelly v. Kosuga (358 U .S. 516 [1959]) which is controlling in the instant case. (Fleischmann Distilling Corp. v. Frontier Liq. Corp., 18 Misc 2d 903; Jamaica Sash & Door v. Prudential Improvement Serv., 137 N. Y. S. 2d 593; Bruce’s Juices v. American Can Co., 330 U. S. 743, 755.)
The next defense of violating the Clayton Anti-Trust Act must be struck down on the same grounds as the first two defenses above since the Sherman Act and the Clayton Act must be considered part of the same comprehensive scheme of legislation, the Clayton Act being enacted to further implement the Sherman Act. We cite as authority National Nut Co. of California v. Kelling Nut Co. (61 F. Supp. 76 [1945]).
Defendants’ fourth affirmative defense charges violation of section 1 of the Act of Congress of June 19, 1936 (49 U. S. Stat. 1526; U. S. Code, tit. 15, § 13) commonly known as the RobinsonPatman Price Discrimination Act. The substance of this defense charges plaintiff with willful and deliberate price discrimination against defendant Pease in violation of the act. Such defense is not available to the defendants in the present action and redress must be sought for the alleged damage in accordance with the terms of the Robinson-Patman Act. In Bruce’s Juices v. American Can Co. (supra) the United States Supreme Court rejected a defense that the seller had engaged in price discrimination against the buyer in violation of the Robinson-Patman Act in a suit by a seller for a balance remaining on a running account of sales over a period of years. The court stated (p. 750): “ The Act prescribes sanctions, and it does not make uncollectibility of the purchase price one of them. Violation of the Act is made criminal and upon conviction a violator may be fined or imprisoned. 49 Stat. 1528, 15 U. S. C. § 13a. Any person who is injured in his business or property by reason of anything forbidden therein may sue and recover threefold the damages by him sustained and the costs of suit, including a reasonable attorney’s fee. 38 Stat. 731, 15 U. S. C. § 15. This triple damage provision to redress private injury and the criminal proceedings to vindicate the public interest are the only sanctions provided by Congress.”
We consider this decision as controlling in the matter.
Defendants’ fifth affirmative defense alleging violation by plaintiff of section 340 of the New York General Business Law, commonly known as the Donnelly Anti-Trust Act, must also be stricken.
Assuming, as we do, for the sake of this defense that the contracts which are the subject of this action are wholly intrastate *441 in character, still defendants may not prevail since there is no allegation that the violations of the Donnelly Act are an inherent part of the contract. The New York courts have followed the lead of the Federal courts in interpreting the Donnelly Act. In the case of Loew’s Inc. v. Radio Hawaii (20 Misc 2d 587 [1959]) the court held: “ There is no reason why the New York State statute (General Business Law, § 340) should receive more rigid application than that given by the Supreme Court of the United States. The rule of the Kelly v. Kosuga case is equally applicable to the New York statute and the defenses which fail under the former must also fail under the State statute ” (p.590).
Defendants rely on the case of Carmine v. Murphy (285 N. Y. 413 [1941]) as being indistinguishable from the instant case. However, there the very act which constituted the essence of the contract, the sale of alcoholic beverages without license, was expressly forbidden by legislative fiat and the illegality of the act was admitted by the plaintiff. In the present case there is no allegation of inherent illegality by defendants and certainly no similar admission by plaintiff.
Defendants assert the proposition that inherent illegality in the contract is not required by the law of New York to invoke the provisions of the Donnelly Act. No authorities are cited to support this contention. There is, however, some contrary authority in New York that the Federal rule should likewise be applied in New York. (See Westinghouse Elec. Corp. v. Lyons, 125 N. Y. S. 2d 420, affd. 1 A D 2d 770 to that effect.) In the absence of any other compelling authority this court elects to follow the lead of its sister court in the Westinghouse case.
Plaintiff moves further to strike out defendants’ partial affirmative defense set out in paragraph numbered Forty-four in the answer. The substance of this defense is that plaintiff, a foreign corporation, failed to qualify to do business within the State of New York until on or about January 24, 1958, a date more than a year after the first of the series of transactions which are the subject of this action; that as a result of this failure to qualify under section 218 of the General Corporation Law plaintiff is precluded from recovery on items numbered 1‘ One ’ ’ through ‘ ‘ Five ”, “ Seven ’ ’ through ‘ ‘ Nine ’ ’, “ Eleven ” through “ Fourteen ”, “ Sixteen ” and “ Twenty ” of Schedule “ A ” attached to the complaint.
Defendants fail to allege anywhere in the answer that the contract was made in this State, an allegation necessary to provide defendants with the protection of section 218 of the General Corporation Law. This court is unconvinced by defendants’ *442 assertion that a liberal interpretation of the entire pleadings will show that plaintiff was doing business in New York. Quite to the contrary, we find nothing in either the complaint or the answer to justify such a conclusion. The failure to affirmatively allege that plaintiff is doing business within this State and that the contract sued on was made in this State makes the defense insufficient in law. (Maple Motor Co. v. Beales, 110 N. Y. S. 2d 623.)
For the purposes of this motion this court finds no need to enter further into discourse on the well-settled law of what does or does not constitute doing business within this State.
In the twelfth affirmative defense it is alleged that defendants Altadale Corporation and Cintra Realty Corporation had no power or authority by virtue of their respective certificates of incorporation, by-laws or otherwise, to make, execute or deliver their respective guarantees and attendant mortgages. It is further alleged that the execution of the guarantees and mortgages were not incidental or in any other way related to or in furtherance of the business of the corporate defendants.
These allegations standing alone do not constitute a defense to the plaintiff’s cause of action, since section 19 of the Stock Corporation Law specifically authorizes corporations to guarantee obligations for the payment of money even though said corporations are not specifically authorized to grant them by their respective certificates of incorporation or by-laws. Section 19, provides in part, as follows: “ Any stock corporation may guarantee any obligation for the payment of money (a) when the guaranty is made in connection with, and incidental to, the exercise by such corporation of its corporate rights, powers, purposes, privileges and franchises, or (b) when the guaranty is made in connection with the negotiation by such corporation, by sale or otherwise, of an obligation owned by it, or (c) when the obligation to be guaranteed is that of another corporation at least a majority of the voting shares of which is at the time owned, directly or indirectly, by the guarantor corporation and when the guaranty is authorized or approved by a resolution of the board of directors of the guarantor corporation, or (d) when the guaranty is specifically authorized or approved by the affirmative vote of the holders of at least two-thirds of all the outstanding shares of such corporation entitled to vote thereon cast at a meeting called pursuant to section forty-five or by the written consent, without a meeting, of the holders of all its outstanding shares entitled to vote thereon.”
The defendants by paragraph 49 implicitly admit possession of power to guarantee “ any obligation for the payment of *443 money,” but allege that the making of the guarantee was not “incidental” or “ related ” to the furtherance of their business (§ 19, par. [a]). However, even if the execution of the guarantees and mortgages was not incidental to or in furtherance of the defendants ’ business, such allegations standing alone would constitute an insufficient defense, since said section 19 specifically sets out three additional criteria of the validity of corporate guarantees. The defendants have failed to allege facts to show that all such conditions of section 19, to wit: paragraphs (b), (c) and (d), are unsatisfied. See Rusch & Co. v. Syndicate First Corp. (7 Misc 2d 198 [1956]) where the court construed said section in such a manner as to render a corporate guarantee for the payment of money intra vires where any one of the four conditions specified in section 19 is satisfied.
Accordingly the twelfth affirmative defense is stricken with the right to defendants to file an amended twelfth affirmative defense within 10 days.