OPINION OF THE COURT
Beatrice Shainswit, J.
Motions numbered 9 and 195 of the calendar of November 4, 1981 are consolidated for purposes of disposition.
The issue before the court is whether a group of defendants, who have operated and controlled three nursing homes, can extinguish the claims of two other active participants who also invested in the homes, on the ground primarily that the two investors were not identified in required public filings as partners.
According to defendants, whatever fiduciary duties they otherwise owed to plaintiff investors are extinguished because of the defective filings. Defendants interlard their references to these defective filings with citations of additional improprieties, all of which involve omission of claimants’ partnership interest. Concededly, all defective filings and reports were made with the knowledge of defendants; moreover, plaintiffs urge that the omissions concerning their partnership, in all filed documents and reports, were at the direction and command of Bernard Bergman, the central figure in operating the three homes.
*237 The controversy therefore boils down to whether Mr. Bergman, who himself has been punished for criminal misdeeds in connection with these very homes, can now confiscate plaintiffs’ individual participation as coventurers. It is rather ironic that those convicted of wrongdoing are seeking to raise a defense of, in effect, unclean hands, urging that public policy somehow requires that they gain additional rewards because they alone were identified in public filings as owning the business entity involved in misbehavior.
It must be noted, at the outset, that there are two plaintiffs, Samuel Dachowitz and Muriel Silverman. The latter is the wife of the former, who has never personally been charged with any wrongdoing, but defendants seek to tarnish her with her husband’s past guilt. Secondly, this is not a suit to enforce a criminal conspiracy, or to compel a division of ill-gotten loot. It is a suit to enforce alleged fiduciary duties, in connection with a lawful enterprise run by various persons, as disclosed and undisclosed contributors of venture capital, who have been punished for deficiencies in the operation of the enterprise.
Defendants move to dismiss the complaint pursuant to CPLR 3211 (subd [a], pars 5, 7). The complaint contains three causes of action, each keyed to a specific nursing home. Succinctly, these are the respective contentions urged on the court.
Plaintiffs allege that they invested in three partnerships that owned three nursing homes; that Mr. Dachowitz was also the accountant for the homes; that the two of them actively participated in the management of the homes from the start; and that they have been denied access to the books and records of the partnerships. They seek an accounting and their share of moneys allegedly obtained or wrongfully spent in connection with the homes.
Defendants — Bernard Bergman and others — ask that the complaint be dismissed as against public policy. They contend that plaintiffs caused, or permitted, the filing of license documentation, nursing home registration, claims for Medicare funds, income tax returns, and other government documents, which omitted plaintiffs’ names; that *238 such undisclosed investment is in violation of State and Federal law; and that plaintiffs (along with defendants) pleaded guilty in State and Federal court to various crimes in connection with these nursing homes. Accordingly, defendants urge that plaintiffs’ participation was in violation of public policy and their complaint should be dismissed. Defendants further contend that, in any event, the Statute of Limitations began running against plaintiffs when they first made their investments in 1972, and therefore bars this suit.
The court denies the motion, for the following reasons:
(1) Plaintiffs cannot be stamped as outlaws for all purposes, even to the extent of being helpless to prevent a misappropriation of their investments in the nursing homes. At the very least, a trial is required to sift the truth of plaintiffs’ urging that their names had been omitted, in documents filed with various government agencies, because defendant Bergman insisted upon such omissions. If that be true, there is a serious issue as to whether Bergman and the other defendants are estopped from relying on an omission, which they themselves had precipitated.
Furthermore, even without the elements of estoppel, there is an equally strong public policy that faithless fiduciaries are required to account to co venturers, and nothing on this record establishes that plaintiffs must summarily be put out of court and defendants reap a windfall.
(2) It appears that defendants may be intent on punishing plaintiffs for their co-operation with the Government in the criminal investigation that entangled Mr. Bergman and the nursing homes, and that defendants now desire economic retaliation against plaintiffs. Here, too, we may be concerned with aspects of public policy interdicting the creation of additional barriers militating against effective prosecution of prime wrongdoers.
(3) It must be borne in mind that we are still at the pleading stage. Facts may emerge, in discovery and at trial, which can better put in focus the present clamor of defendants that there be no further factual revelations, and which can supply additional substantive flesh to plain *239 tiffs’ averments of estoppel, and to their depiction of themselves as subordinates under Mr. Bergman’s thumb.
(4) The omission to list oneself as a partner, where required by law, is undoubtedly a wrong with potentially serious consequences, both criminal and civil. The criminal consequences have already been suffered. The civil consequences remain to be tried in this lawsuit, apart from governmental and private suits for overcharges, improper government payments and the like. But no statute commands, or can be construed as, inflicting the further penalty of forfeiture of plaintiffs’ investments in these homes. (Rosasco Creameries v Cohen, 276 NY 274; Holmes v Nationwide Mut. Ins. Co., 40 Misc 2d 894, affd 19 AD2d 947; 10 NY Jur, Contracts, § 124.)
A most apparent analogy is where a defendant seeks to escape payment for goods sold and delivered, on the ground that plaintiff is using the goods in connection with the conduct of business violating the antitrust laws. The courts have been astute to draw a fine line, and to insist upon honoring commercial obligations which are not an integral feature of the antitrust violations. (See Kelly v Kosuga, 358 US 516; Bruce’s Juices u American Can Co., 330 US 743, 755.) As Mr. Justice Jasen said in Fleet-Wing Corp. v Pease 011 Co. (29 Misc 2d 437, 439, mod on other grounds 14 AD2d 728): “An affirmative defense charging violation of the antitrust laws must be struck down upon motion to dismiss unless the contract for the sale of goods is alleged to be an integral part of the illegal conspiracy. The contract must in itself carry out the terms of the illegality and be part and parcel of the violations to allow the defense to stand.”
Indeed, there is a broad general proposition, squarely applicable to our case, that contractual rights, and a fortiori fiduciary duties, are not obliterated because incidental to the performance of a contract are the side effects of isolated illegal conduct already fully punished. (Dodge v Richmond, 10 AD2d 4, affd 8 NY2d 829; 10 NY Jur, Contracts, § 122.)
McConnell v Commonwealth Pictures Corp. (7 NY2d 465), on which defendants rely, is inapposite. There plaintiff was seeking to recover the fruits of his crime — i.e., the *240 promised share of defendant’s gross receipts from distribution of pictures stemming from rights plaintiff had procured by bribing a representative of the producer. Chief Judge Desmond, writing for the majority, upheld the sufficiency of the defense that plaintiff could not recover the rewards of corruption.
In our case, plaintiff is not seeking to enforce a criminal conspiracy in order to establish a right to recovery. A nursing home is not an illegal instrumentality, nor is an investment therein subject to confiscation by the chief operator of the home because, in the course of assuming prime responsibility for criminal misdeeds, he also instigated defective filing. It is Bergman who is seeking to profit by his own wrong, by trading upon alleged omissions in filings which, according to plaintiff, Bergman instigated. If plaintiff can establish this at trial, the filing omissions should not be a financial albatross around his neck, enabling defendant Bergman to capitalize on Bergman’s own alleged wrongful instructions. As noted, we are dealing solely with pleadings. “There must at least be a direct connection between the illegal transaction and the obligation sued upon.” (McConnell v Commonwealth Pictures Corp., 7 NY2d 465, 471, supra.) Defendants have been unable to establish on this motion such a direct connection. The case falls more within the compass of Messersmith v American Fid. Co. (187 App Div 35, affd 232 NY 161) and Dodge v Richmond (supra), rather than McConnell.
The cases arising under the Alcoholic Beverage Control Law, on which defendants further rely, are equally irrelevant. There explicit statutory provisions expressly condition issuance of a liquor license on the provision of the names and addresses of all applicants. There is no such parallel provision in the Public Health Law. And, if anything, the absence of such a provision, in view of the presence of such a provision in the Alcoholic Beverage Control Law, bespeaks a legislative intent to provide for different treatment. (10 NY Jur, Contracts, § 124.)
Moreover, it is virtually a subject of judicial notice that the rigid fetters placed upon facilities engaged in the sale of liquor are rooted in a history of concentrated efforts to *241 rid the liquor field of the criminal element. As yet we have no such history in the nursing home field — except for the relevations of recent date, essentially in connection with defendant, who are now seeking to profit still further from their own wrong.
Finally, it should also be noted that a criminal record is not a per se disqualification in the nursing home field, as attested by the continuing role of defendant Bergman and others, despite the taint of convictions. This too confirms that the Legislature has not yet decreed that those with criminal taint in the nursing home industry are per se outlaws, who can be fleeced of their investments in the industry without a scrap of judicial relief.
The defective filings in this case do not outlaw the performance of the alleged distinct fiduciary duties of defendants. A trial appears to be required to illuminate the alleged transgressions of defendants in failing to account or otherwise misappropriating plaintiffs’ investments, the role each party played vis-a-vis wrongful filings, and the extent to which these subjects overlap.
(5) The Statute of Limitations point is without merit. A coventurer is not deemed to breach his duty at the moment his duty originates. It is a continuing duty, and plaintiffs are entitled to sue when a blow has been struck seeking to extinguish their interests; indeed, even without attempted confiscation, a coventurer can always demand an accounting. The equity time limit for a demand for an accounting has not run. By every appropriate yardstick, plaintiffs’ suit is timely.
Defendants’ motions are therefore denied.