Hasbro Bradley, Inc., et al., Appellants, v Coopers & Lybrand, Respondent, et al., Defendant.

First Department, May 21, 1987

## APPEARANCES OF COUNSEL

*Susan S. Egan* of counsel *(Alfred R. Paliani* with her on the brief; *Edwards & Angell,* attorneys), for appellants.

*Alan M. Gelb* of counsel *(David C. Burger* and *Walter G. Ricciardi* with him on the brief; *Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey,* attorneys), for respondent.

## OPINION OF THE COURT

WALLACH, J.

This is an action brought by 14 unsecured creditors of Northern Specialty Sales, Inc. (Northern) against Northern's accountants Coopers & Lybrand (Coopers) for fraud and gross negligence in the preparation of Northern's certified financial statements for the year 1982 upon which plaintiffs allegedly relied in selling toys and electronic games to Northern on open and unsecured credit of approximately $17.7 million. Northern, a toy wholesaler, subsequently failed, was ultimately adjudicated a bankrupt, with the advances proving uncollectible. On a previous appeal (121 AD2d 870), we sustained the sufficiency of the second cause of action of this complaint based upon gross negligence and fraud *(Credit Alliance Corp. v Andersen & Co.,* 65 NY2d 536). We are now called upon to consider the sufficiency of Coopers' affirmative defenses and counterclaims to the fraud action, the latter styled in the amended answer as setoffs and recoupments.

The first six affirmative defenses and the first five setoffs and recoupments allege conduct by plaintiffs in violation of sections 1 and 2 of the Sherman Antitrust Act (15 USC §§ 1, 2), Robinson-Patman Act (15 USC § 13 [a], [b]) the New York State Donnelly Act (General Business Law § 340 *et seq.),* together with a claim for common-law unfair competition both by reason of the statutory violations as well as at common law. An eighth affirmative defense, and seventh setoff and recoupment, alleges breach of contract by plaintiffs in selling defective toy products to Northern. Defendant Coopers urges that these allegations provide viable defenses to plaintiffs' cause of action against them as accountants for issuing false and misleading financial statements because the unfair competition and contractual breach, allegedly committed by plaintiffs, was the proximate cause of Northern's bankruptcy and plaintiffs' financial loss. Thus Coopers argues, since plaintiffs

were the creators of their own injury, their misdeeds provide Coopers with a full, or at least partial, defense.

In denying plaintiffs' motion to strike these defenses and setoffs pursuant to CPLR 3211 (b), the IAS Part found that the alleged misconduct in unlawful restraint of trade could be viewed as having "directly caused the bankruptcy" of Northern and that "defendants should be allowed to prove * * * that the subsequent bankruptcy of Northern was caused by the plaintiffs actions after the financial reports issued." We disagree and reverse.

In *TNT Communications v Management Tel. Sys.* (32 AD2d 55, *affd* 26 NY2d 639), we found that in an action brought by a multimedia company against its former employees to enjoin disclosure and use of plaintiff's trade secrets the defendant employees' defenses and counterclaims, alleging monopolistic and unfair competitive practices by plaintiff, raised issues only of collateral wrongdoing. We therefore held they were not viable defenses to plaintiff's cause of action for protection of its legitimate trade secrets. Specifically, we noted at 32 AD2d, *supra,* at 57: "Defendants' alleged thievery and plagiarism were and are independent acts unrelated to plaintiff's improper business methods set forth in the defense. Furthermore, the stated defense lacks a proper showing that the plaintiff's alleged 'acts of unfair competition and predatory practices', including alleged antitrust violations, have caused or will result in any injury to the lawful rights of defendants."

The same situation obtains here. Coopers' alleged fraud or gross negligence in the publication and distribution of the fraudulent financial statements, followed by plaintiffs' multimillion dollar extension of credit in reliance thereon, are independent acts wholly unrelated to plaintiffs' illegal competitive conduct set forth in the defenses and setoffs. The essential element that defendants in *TNT* could not allege was either that they were among the competitors directly harmed by plaintiff's improper market practices, or that those same practices could provide an excuse for defendants' wrongful conduct in misappropriating plaintiff's trade secrets. Coopers labors under precisely the same disability here. As Northern's accountants Coopers incurred no injury arising from plaintiffs' manipulation of the domestic toy market, nor can it invoke the equitable defense of unclean hands in this action exclusively at law. For these reasons, affirmative defenses based upon violation of the antitrust laws "must be struck down upon motion to dismiss unless the contract for the sale of

goods is alleged to be an integral part of the illegal conspiracy" *(Fleet-Wing Corp. v Pease Oil Co.,* 29 Misc 2d 437, 439 [Jasen, J.], *mod to permit service of an amended pleading* 14 AD2d 728; *Otis Elevator Co. v John J. Reynolds, Inc.,* 81 Misc 2d 314; *see also, Dachowitz v Bergman,* 113 Misc 2d 236).

Coopers' eighth affirmative defense and seventh setoff resting upon an alleged breach of contract in selling defective products to Northern is also facially defective in that there is no allegation of contractual privity with plaintiffs and the cause of action, if any, lies solely with Northern or its trustee in bankruptcy *(Alvord & Swift v Muller Constr. Co.,* 46 NY2d 276; *see also, Martirano Constr. Corp. v Briar Contr. Corp.,* 104 AD2d 1028; *Fargo Equip. Co. v Carborundum Co.,* 103 AD2d 1002; *State v General Motors Corp.,* 120 Misc 2d 371, 376).

To escape the confines of the rule enunciated in *TNT (supra)* and related cases, Coopers argues that its pleading should be sustained under the comparative fault doctrine established in CPLR article 14-A. CPLR 1411 provides: "In any action to recover damages for personal injury, injury to property, or wrongful death, the culpable conduct attributable to the claimant or to the decedent, including contributory negligence or assumption of risk, shall not bar recovery, but the amount of damages otherwise recoverable shall be diminished in the proportion which the culpable conduct attributable to the claimant or decedent bears to the culpable conduct which caused the damages."

Specifically, Coopers urges that its allegations of unfair competition and breach of the antitrust laws constitutes "culpable conduct" which provides an affirmative defense under CPLR 1412. In support of that contention, Coopers cites *Lippes v Atlantic Bank* (69 AD2d 127) as authority for the proposition that plaintiffs' culpable conduct may diminish or extinguish recovery in a setting involving commercial loss. *Lippes,* however, is readily distinguishable. Plaintiff Lippes was a factor who suffered losses in his purchase of bogus promissory notes where a bank officer conspired with the maker by holding up presentment of the notes for collection in regular course until the fraudulent issuer could cover them with a cash deposit at the bank. In remanding the matter for trial, we held that the failure of the factor to make any investigation as to the spurious origin of the notes over the course of 2½ years raised an issue of comparative fault when the factor brought suit against the bank. The negligent conduct of the plaintiff himself in *Lippes* was directly and inextricably inter-

woven with the resulting loss. Here, there is no similar relationship between the alleged fraudulent preparation of Northern's financial statement and plaintiffs' allegedly illegal trade practices. Based on the allegations of the complaint, the harm alleged by plaintiffs is the advancement of credit in reliance upon the fraudulent financial statements. There is no claim that the Coopers' financial statement brought about Northern's bankruptcy. What is presented here is a complaint alleging one discrete wrong with a purported defense based on an entirely unconnected wrongdoing. Under these circumstances any apportionment based upon mutually culpable conduct is not recognized, even between successive tort-feasors inflicting separate injuries (see, Bergan v Home for Incurables, 75 AD2d 762; Alexander v Callanen, 104 Misc 2d 762).

As counterclaims (setoffs), these allegations are even more clearly without merit. Under CPLR 3019 (a), "A counterclaim may be any cause of action in favor of one or more defendants * * * against one or more plaintiffs" (emphasis added). Obviously, Coopers, having suffered no direct injury to itself under these allegations, has no cause of action against these plaintiffs and therefore no counterclaim in this action, whether it be characterized as a setoff, recoupment or anything else. Indeed, to permit these setoffs to stand would expose plaintiffs to a double recovery, if the party actually injured were to commence an action against them thereon.

Notwithstanding the foregoing, we find some matter alleged in the amended answer which could properly be alleged under the provisions of CPLR 3018 (b) which states that "A party shall plead all matters which if not pleaded would be likely to take the adverse party by surprise or would raise issues of fact not appearing on the face of a prior pleading". Paragraph 25 of the amended answer, for example, sets forth five factors in the 1982 financial statements of Northern at issue which the pleader alleges would put a prudent lender on notice of the extremely shaky character of Northern as a credit risk. These allegations would negative plaintiffs' reliance upon those features alleged to be misleading in the 1982 financial statement. This affirmative matter, together with any other similar allegations related strictly to the extension of credit, should be permitted in a further amended pleading if Coopers be so advised, so as to clarify the issues and to avoid surprise at trial.

Accordingly, the order, Supreme Court, New York County (Kenneth L. Shorter, J.), entered on November 25, 1986 deny-

ing plaintiffs' motion to dismiss the second through eighth affirmative defenses and first through seventh setoffs and recoupments alleged by defendant in its amended answer, should be reversed, on the law, and the motion should be granted, with costs, and with leave to replead.

SULLIVAN, J. P., Ross, ASCH and MILONAS, JJ., concur.

Order, Supreme Court, New York County, entered on November 25, 1986, unanimously reversed, on the law, and the motion to dismiss the second through eighth affirmative defenses and first through seventh setoffs and recoupments granted, with leave to replead. Appellants shall recover of respondent $75 costs and disbursements of this appeal.