James N. RUBIN, as Executor under the Last Will and Testament of Natalie Rubin Lehrman, Plaintiff,

v.

Rose L. KURZMAN, Individually and as Executrix of the Estate of Samuel R. Kurzman, Deceased, XQB Improvement Corporation and Max Block, Jr., Defendants.

No. 70 Civ. 4790.

United States District Court, S. D. New York.

May 30, 1977.

was compensation for defendant's activities on behalf of FAAL.

Herbert W. Aronson, Mount Vernon, for plaintiff; Henry L. Hecht, Mount Vernon, of counsel.

Kadel, Wilson & Potts, New York City, for defendant Rose L. Kurzman; Abraham Wilson, New York City, of counsel.

Max Block, Jr., New York City, pro se.

## OPINION AND ORDER

KEVIN THOMAS DUFFY, District Judge.

Samuel Kurzman was an attorney duly admitted to the practice of law in the State of New York. He was also a wheeler and dealer in real estate who, for his own personal reasons, often used nominees as record owners or mortgagors of the real estate in which he was dealing. Among those used as nominees by Kurzman were his wife, Rose Kurzman, his two daughters, Eleanore K. Lehrer (hereinafter "Eleanore") and Wilma J. Kurzman, now known as Wilma H. Hecker (hereinafter "Wilma"). At times, the nominees also included his sister, Natalie Rubin Lehrman (hereinafter "Natalie Rubin"); his brother-in-law Abe Rubin, and his son-in-law Sidney Lehrer; and his counsel and one-time partner, Max Block, Jr.

Samuel R. Kurzman is dead, having passed to his eternal reward on July 12, 1969.

Natalie Rubin passed away on May 16, 1973, after the institution of this action. Her son and executor, James Rubin, has been substituted as plaintiff.

The plaintiff's claim herein basically involves two parcels of land, one the Sanford Avenue site in Queens, and the other the East 107th Street site in Manhattan.

## I.

Taking first the Sanford site, through a number of mesne conveyances and mortgages Samuel Kurzman ended up with a mortgage held in the name of his daughters Eleanore and Wilma and his sister Natalie Rubin. There came a time on July 1, 1965, when the mortgage in the amount of $176,-876.35, was assigned by the nominees to the

East New York Savings Bank in return for a check drawn upon an account of that bank. Samuel Kurzman thereafter obtained the signatures of his two daughters and Natalie Rubin as endorsers of that check, cashed it, and apparently used part of the proceeds in another real estate transaction. It is clear that none of the nominees ever gave any consideration for the mortgage which was held in their names.

At or about the same time, Samuel Kurzman gave to his sister, Natalie Rubin, the amount of $5,500. Although the purpose of the payment is not entirely clear, it would appear that this sum was intended as a gift.

In the first cause of action, plaintiff claims that one-third of the monies received under the mortgage on the Sanford Avenue properties belonged to Natalie Rubin as the mortgagee of record, less the amount used by Samuel Kurzman in connection with the purchase of certain properties which make up part of the 107th Street parcel. As an alternative claim, the third cause of action seeks one-third of the monies received from the Sanford Avenue mortgage without deduction.

In support of these claims, a letter (Plaintiff's Exhibit 5) from Samuel Kurzman to Natalie Rubin was introduced. The letter is dated November 23, 1956 and discusses a contract for a mesne conveyance of the Sanford Avenue property from Kurzman's two daughters and Natalie Rubin to one Sydney Robbins with the terms providing for Eleanore, Wilma and Natalie Rubin to take back a purchase money mortgage for $150,000. In pertinent part the letter states:

"While the contract calls for $150,000, it is because I deemed it most expedient to set it up this way tax wise. The true amount that you, jointly with my daughters, will share equally is actually $285,-000. This will be a *life estate* for the three of you and will be paid as provided in the contract as follows:

3 years at $9000 or $27,000 — $750 each quarter

12 years at $12,000 or $144,000 — $10,000 " "

"Balance approximately $114,000 at the end of the 15th year making a total of $285,000. God willing. I hope to be able to guide you in this for many years. In my absence, however, Max Block, Jr., of my office and my son-in-law Sidney know all about the matter.

"At this juncture both Rose and I feel the delights of being living witnesses to something that we hope will enhance Abe's and your happiness for many years.

"Please sign all of the copies of the contract at the places indicated by your initials and have some one witness your signatures and return them immediately to my office.

"With all my love and very best wishes to you and yours,

Affectionately,

Kay

P.S. I am certain that mother and father are happy at this wherever they may be." (emphasis in the original).

The Sanford Avenue property was conveyed and the purchase money mortgage taken back in accordance with the contract. Thereafter, the Sanford Avenue property was again conveyed to a new owner who gave a mortgage to Eleanore, Wilma and Natalie Rubin for the sum of $50,000. The two mortgages were consolidated into one mortgage in the principal sum of $200,000 on June 26, 1958.

As noted previously, this mortgage was assigned to the East New York Savings Bank on July 1, 1965. Apparently no payments were ever made to Eleanore, Wilma or Natalie Rubin prior to the assignment. When the proceeds of the assignment were paid over to the two daughters and the sister as record holders, they in turn endorsed the check over to Samuel Kurzman.

Plaintiff now claims that Samuel Kurzman and Rose Kurzman, his widow, executrix and main beneficiary under his will, were unjustly enriched by this series of transactions and that a constructive trust should be imposed on the proceeds of the assignment of the mortgage.

The defendant Rose Kurzman argues that when the three assignors of the mortgage, including Natalie Rubin, endorsed the check representing the proceeds of the assignment, they completely divested themselves of any claim, interest or title to the mortgage proceeds. In support of this proposition the defendant points out that at no time did Eleanore, Wilma or Natalie Rubin have any dominion or control over the Sanford Avenue property. It is also urged that since Natalie Rubin did not file a claim against Samuel Kurzman's estate within the seven month period prescribed for that purpose under the New York Surrogates Court Procedure Act § 1802, her estate cannot recover in this action.

The purported defense under the New York Surrogates Court Procedure Act § 1802 must fall. That section is intended to protect an executor or executrix from claims after a good faith disposition of the property of the decedent which has already passed out of the hands of the executor or executrix. *See In re Seife's Estate*, 37 Misc.2d 863, 235 N.Y.S.2d 514 (Surr.Ct., N.Y. County 1963). This policy is not furthered here since the defendant Rose L. Kurzman is not only the executrix but also the main beneficiary of Samuel Kurzman's will. *Cf. In re Simon's Estate*, 48 Misc.2d 851, 265 N.Y.S.2d 818 (Surr.Ct., Nassau County 1966). But the inquiry cannot stop here, for inherent in the defendant's claim of staleness is the equitable defense of laches. Natalie Rubin knew of the Sanford Avenue transactions at least as early as November 23, 1956, yet no action was brought to enforce the alleged constructive trust until 1970. This is an inexcusable fourteen year delay, coupled with the prejudice resulting from the intervening death of the principal actor, Samuel Kurzman, is sufficient to establish the defense of laches to the equitable claim for constructive trust. 2 Pomeroy, *Equity Jurisdiction* [5th ed.] § 419.

Even were the defense of laches not a bar, plaintiff's claim would still not succeed. Natalie Rubin's own perception of the transaction is most revealing. While the attorney for the estate objected to the receipt in evidence of the depositions of Natalie Rubin (offered by the defendant Block) on the ground of the dead man statute, N.Y. CPLR § 4519, I accepted them into evidence for what they were worth, properly refusing to rule on each question and answer of the depositions in a bench trial. These depositions contain startling admissions against interest.

The so-called dead man statute prohibits testimony of non-written communications concerning transactions between an interested witness or party and a decedent. The statute is aimed at the protection of the estate of the decedent since the dead are unavailable to testify in refutation of such claims. The statute only prohibits a person from testifying "in his own behalf or interest." But it is not the executor of Natalie Rubin's estate who seeks to introduce the former testimony to establish his claim. Rather, defendant Block, an adverse party, relies on admissions against interest made by Natalie Rubin to defeat the claim of her estate. The dead man's statute has never been a bar to an interested party testifying *against* his own interest, *see Carpenter v. Soule*, 88 N.Y. 251 (1882), *Harrington v. Schiller*, 231 N.Y. 278, 132 N.E. 89 (1921); and the same rule should apply where an adverse party offers admissions made by an interested person.

At her depositions Natalie Rubin testified:

"Q: Did you look upon this as some kind of a testamentary arrangement he had for you if he died you would be taken care of?"

(Objection as to form deleted.)

"A: Well, I felt that. Yes. And he told me that too.

"Q: What did he tell you?

"A: That I would always be taken care of. If anything should ever happen to him I would be taken care of.

"Q: Did you ever give any money to your brother to acquire these properties?

"A: No.

"Q: By these properties I mean any properties which you say have been put in your name."

(Deposition of Natalie Lehrman.)

In signing over the proceeds of the assignment of mortgage of the Sanford Avenue property to Samuel Kurzman, it is therefore clear that Natalie Rubin recognized her position as a mere nominee. While she may have expected a testamentary disposition from Samuel Kurzman, that expectation was merely a hope based on an alleged oral promise. Since it does not qualify as a testamentary disposition, it must fall. *See McCarthy v. Pieret*, 281 N.Y. 407, 24 N.E.2d 102 (1939); N.Y. EPTL 3–2.1.

## II.

The second and fourth count of the complaint involve the real property referred to as the 107th Street site.

It appears that Sidney Lehrman (now deceased), the son-in-law of Samuel Kurzman, decided to follow in the steps of his father-in-law, and purchase certain property in mid-Manhattan. Apparently, because of the defalcation of his agent he lost title to the property and accepted in settlement of his claim certain property on 107th Street owned by the person guilty of the defalcation. Samuel Kurzman set up the R.E. Vision Realty Corp. to take title to the property, giving a mortgage in return to the defendant Max Block, Jr., as his nominee, along with the so-called "Alkow interests." In connection with the foreclosure of the mortgage on the property, Samuel Kurzman filed an affidavit in the state court that his interest in R.E. Visions was merely that of a nominee for his daughter and son-in-law.

It is alleged that the money for this mortgage came from the assignment of the Sanford Avenue property thus producing the alternative claims of the first and third counts of the complaint. The plaintiff,

however, did not attempt at trial to trace the proceeds of the one transaction into the other but relied solely on a letter signed by the defendant Max Block, Jr., which provides:

"MAX BLOCK, JR. 866 United Nations Plaza
Counselor at Law  New York, N.Y. 10017

August 7, 1967

"Mrs. Natalie Rubin
15700 Van Aken Boulevard
Shaker Heights, Ohio

"Dear Mrs. Rubin:

 This will confirm that I am holding in trust for you, as your nominee, a one-half (½) participating interest in a certain series of four (4) mortgages, more particularly described in the said certain Schedule A, annexed to the said certain assignment to me, dated June 6, 1967, from Vera and Jack N. Alkow, covering premises 10–12 East 108th Street; 9–11 East 107th Street and 23 East 107th Street, all in the Borough of Manhattan, City and State of New York.

"Any and all proceeds received or derived from the aforesaid mortgages, to the extent of the said one-half (½) interest therein, to be derived from either the sale or liquidation of the said mortgages will be turned over to you upon receipt thereof by me.

Very truly yours,
(signed)
MAX BLOCK, JR."
"MBJR/mb"

This letter was drafted by Samuel Kurzman, retyped at the defendant Block's office, and signed by Max Block, Jr. Block in turn took the letter and placed it into his file covering Kurzman real estate deals. Some time thereafter, Samuel Kurzman had a heart attack and was ordered by doctors to cut back on his work. He also removed his office from Block's to the firm of Ryan and Ryan, Esqs. Block permitted Kurzman access to his files in Block's office and apparently Kurzman removed the Block letter referred to above to the office of Ryan and Ryan, Esqs.

At the time Block signed the above letter, he was merely acquainted with Natalie Rubin, having seen her on infrequent visits to her brother's office. At no time did Block deliver the letter to Natalie Rubin or give it to anyone for delivery to her. Obviously, Block still considered himself a nominee of Samuel Kurzman because at Kurzman's direction he and the Alkow group transferred title to the 107th Street property into the XQB Corporation, which was apparently fifty percent owned by Kurzman and fifty percent owned by the Alkow interests.

On the night of Samuel Kurzman's funeral, July 14, 1969, Tomas Ryan of Ryan and Ryan, Esqs., asked if he could speak to Natalie Rubin privately. Apparently, in going through Kurzman's files Ryan had come across the letter dated August 7, 1967 from Max Block, set out above, and he delivered it to Mrs. Rubin. In counts two and four, Mrs. Rubin bases her claim against Max Block for breach of fiduciary duty which she claimed he owed her under the express trust provisions of the letter.

After Kurzman's death, the fifty percent ownership of XQB was transferred to Rose Kurzman individually and as executrix of the estate of Samuel B. Kurzman. Count two seeks to have these shares transferred to the plaintiff.

In his defense, Block points to the non-delivery of the letter during the lifetime of Samuel Kurzman. Alternatively, Block asserts that even if the trust were established, his sole obligation was to turn over the proceeds "upon receipt by me."

It is clear to me from the content of the letter and the context in which it was written, that a transfer of the mortgage from Max Block, nominee for Kurzman, to Max Block, trustee for Natalie Rubin, was to take place only when Kurzman directed Block to deliver the letter to his sister or Kurzman delivered it himself. Neither occurred during the lifetime of Samuel Kurzman. Thus the letter could not have created either an inter vivos trust or gift. Furthermore, there is no indication in the record that Block ever received any proceeds; he testified that he never received any proceeds, and I believe him.

III.

In conclusion, plaintiff has failed to establish by the fair preponderance of the evidence that his testatrix received an inter

vivos interest in the Sanford Avenue mortgage or its proceeds. Moreover, even if the interest had been established, any attempt to trace the proceeds would be barred by laches.

As to the 107th Street property, the proof fails to demonstrate that Kurzman ever established or funded the trust which he, at one time, planned to create; instead, he treated the mortgage as his own up until his death.

The claims of plaintiff executor to the proceeds of the Sanford Avenue and 107th Street mortgages amount to no more than promises by Samuel Kurzman to make inter vivos or testamentary disposition to his sister. Kurzman, a lawyer and experienced real estate investor, could have provided for his sister had he chosen to do so. But, regardless of his reasons or intentions, his sister never received a legally enforceable interest in those properties.

This opinion constitutes my findings of fact and conclusions of law. Rule 52, Fed. R.Civ.P.

Settle judgment for defendants on 7 days' notice.