OPINION OF THE COURT
Michael D. Stallman, J,
This respondent tenant’s motion for summary judgment in a licensee holdover proceeding raises issues of first impression. Does the Federal section 8 housing assistance law (42 USC § 1437f) preempt or supersede New York landlord-tenant law? Do relatives of section 8 tenants have succession rights regardless of New York law? Are a deceased tenant’s sworn statements to the landlord binding on, or admissible against, her child and grandchildren?
CONTENTIONS OF THE PARTIES
It is agreed that in August 1973 Georgia Harvey, respondent’s mother, leased the subject one-bedroom apartment pursuant to a section 8 tenancy. She resided there until three weeks before her death in May 1986. Virtually all else is in dispute. Respondent alleges that she and two children moved into the apartment in 1979, after separating from her husband. She claims that she has continuously resided there, except for several months in 1984. She asserts that she and her three children have been continuously and exclusively dependent on public assistance. Respondent’s mother, a Social Security disability recipient, was diagnosed in 1979 as having cancer. Respondent alleges that she continuously cared for her mother in the apartment, by cooking, cleaning, administering medication and otherwise attending to her mother’s personal needs.
Affidavits of respondent’s sister, and of several neighbors, support respondent’s contentions. School records indicate that the children have attended the local public school since 1980. Nevertheless, income recertification forms apparently signed and filed by respondent’s mother from 1980 through 1985 list her as the sole occupant of the apartment and state that her Social Security payments were the only source of household income.
Petitioner contends that respondent is either a squatter, or a former licensee whose license terminated upon the death of the tenant. (RPAPL 713 [3], [7].) Respondent alleges entitlement to possession as the legal successor to her mother’s section 8 tenancy. She moves for summary judgment on her *655 third and fourth defenses, claiming section 8 status as either a "remaining member of a tenant family” or a person "essential” to the "care or well being” of a section 8 lessee. (42 USC § 1437a [b] [3], which superseded § 1437a [former (2)].)
THE FEDERAL STATUTE
Congress adopted the section 8 housing program to provide decent and safe housing through the private sector to certain "lower-income” families, the elderly and the disabled. (Housing and Community Development Act of 1974, Pub L 93-383, adding 42 USC § 1437f; legislative history, 1974 US Code Cong & Admin News 4314-4317; Kohl v Housing Auth., 537 F Supp 1207.) The statute authorizes the Department of Housing and Urban Development (HUD) or local public housing authorities to contract with private landlords. In exchange for a guaranteed subsidized market rental level, landlords provide apartments to approved families. The family rents the apartment directly from the landlord and pays a fraction of the rent commensurate with family income "from all sources of each member of the household”. (42 USC § 1437f [f] [former (3)].) The balance is paid by the Government. Recertification of income and family composition takes place at least annually, and is based on the tenant’s filing of sworn answers to a questionnaire (42 USC § 1437f [c] [3]; 24 CFR 881.603 [c] [2].) Failure to timely submit this information is deemed a substantial breach of the tenancy. (24 CFR 880.607 [b] [3] [ii].)
The section 8 program is thus quite different from traditional housing programs under which Government itself finances the construction of housing units, and directly or indirectly manages them. (Cf., Thompson v Washington, 497 F2d 626.) An ongoing public subsidy of an essentially private landlord-tenant relationship, section 8 sought to afford poor families greater choice, independence and dignity than that available from customary public housing. The family receives its benefit conditioned on maintaining statutory eligibility requirements and complying with the obligations of tenancy. The private owner receives the benefit of a Government subsidy and a guaranteed return by complying with the mandates of the statute and its implementing regulations. (See, legislative history, 1974 US Code Cong & Admin News 4314.)
The section 8 program recognizes the entire family as the tenant, entitled to occupancy and assistance. It thereby en *656 courages family cohesion and the care of the elderly and disabled in the home. (See, 42 USC § 1437a [former (2)] [D]; § 1437e; 24 CFR part 812.) The statute construes "family” broadly to include, inter alia, a "remaining member of a tenant family” and an elderly or disabled single person. (42 USC § 1437a [b] [3].)
The term "remaining member of a tenant family” (42 USC § 1437a [b] [3] [C]) is not otherwise defined by statute or regulation.[1] Since it is not ambiguous, it should be defined according to the ordinary and natural meaning of its own words, as a person who had actually been in occupancy as a part of the family unit at the time of the named tenant’s death. Its use recognizes an underlying statutory assumption: all family members have occupancy rights which are not terminated by the death of any member. In contrast, one who assumed occupancy just before the tenant’s death, with no purpose other than that of succeeding to the tenancy, is not so protected. Such an interloper is not part of the class which the Federal law sought to benefit. (Cf., New York City Hous. Auth. v Nesmith, 100 Misc 2d 414.)
An "elderly family” is deemed to include a disabled head of household as defined by the Social Security Act (42 USC § 423 *657 et seq.) and a person who "is determined to be essential to his or her care and well being.” (24 CFR 812.2; 42 USC § 1437a [former (2)].) This provision clearly applies to a temporary occupant, such as a nurse, home-care attendant or housekeeper, and prevents such person’s presence from being deemed a breach of the lease. Since the "essential” status stems from the disabled person’s need, it ends upon the death or removal of the disabled person or the termination of the need. It is contextually obvious that such a person does not become a remaining member of the tenant family entitled to continued occupancy upon the disabled person’s death. (But see, Second Farms Neighborhood Hous. Dev. Fund Co. v Perez, Civ Ct, Bronx County 1986, index No. 47421/86, affd without opn App Term, 1st Dept 1988 [granddaughter in occupancy deemed protected after her grandmother’s death as both a remaining family member and a person essential to her care].)
These definitions in particular, along with other provisions, indicate a strong policy against the displacement of section 8 occupants. (See, 42 USC § 1437f [d] [1] [B] [ii]; 24 CFR 880.607; see also, Brezina v Dowdall, 472 F Supp 82.) For example, expiration of a lease is not a permissible ground for terminating the tenancy. (24 CFR 880.607 [b] [1] [iii].) Furthermore, if a change in family size causes the housing unit to become either smaller or larger than appropriate, subsidies will not be reduced or terminated until the family is relocated to a more suitable unit. (24 CFR 880.605.) Indeed, the owner is required to offer the family a different unit as promptly as possible. (24 CFR 880.605, 881.605.)
In sum, section 8 guarantees continued protection to every legitimate member of the family unit in occupancy. It recognizes that no such family member should suffer eviction, dislocation and homelessness upon the death of the tenant of record. It is thus consistent with the original ameliorative purpose of the United States Housing Act of 1937, the comprehensive legislation of which section 8 forms a part. (See, Thorpe v Housing Auth., 393 US 268, 281.)
SUPREMACY
Petitioner maintains that section 8 is entitlement legislation, regulating only the subsidy payment, and not affecting the applicable corpus of existing State landlord-tenant law. Respondent, however, contends not only that her status is defined by section 8, but that New York law is entirely *658 inapplicable. Indeed, respondent maintains that Federal law has preempted this proceeding, requiring its dismissal.
The Supremacy Clause of the United States Constitution declares that "the Laws of the United States * * * shall be the supreme Law of the Land”. (US Const, art VI, cl 2.) Consequently, where a conflict exists between State and Federal law in an area properly within congressional jurisdiction, Federal law controls. (See, Restatement [Second] of Conflict of Laws § 2; Tribe, American Constitutional Law, at 479 et seq. [2d ed].) It is a necessary and axiomatic correlate of Federalism that State power must defer to Federal, not only where there is a direct statutory contradiction, but where the exercise of State power would be inconsistent with the purposes of the Federal law or would interfere with the exercise of rights under Federal law. (Gibbons v Ogden, 9 Wheat [22 US] 1; see, Xerox Corp. v County of Harris, 459 US 145.)
It may be apparent that Congress intended that the Federal Government exclusively occupy a given field, even without actual conflict or explicit pronouncement of such preemptive intent. Any State legislation, even if consistent with Federal law, is then impermissible. (See, Tribe, op. cit, at 497 et seq.) Such complete field preemption can be found where the Federal regulatory scheme is so pervasive as to render State legislation redundant. The United States Supreme Court has recognized a strong presumption against complete field preemption, particularly in areas traditionally subject to State law, since facile application of this doctrine could overwhelm the delicate interplay of Federalism. (See, Price v Santa Fe Elevator Corp., 331 US 218, 230.)
When section 8 is analyzed according to these principles, it is clear that Congress did not intend to completely preempt the application of State landlord-tenant law to covered accommodations and their occupants. First, few areas of law have been considered more local than the landlord-tenant relationship.[2] Second, the Federal legislative scheme is not all encompassing, recognizing that most rights and obligations of tenancy are a function of agreement and State law. The Federal law does not set forth a comprehensive procedure for dispute resolution. Rather, the regulations provide that any termination be in accordance with both Federal law and State and *659 local landlord-tenant law. (24 CFR 880.607 [b] [1] [iii].) A finding of complete field preemption would leave no remedy to tenant or landlord in the event of a breach. Common sense dictates that Congress did not intend to create such a vacuum. (Compare, Pacific Gas & Elec. Co. v State Energy Resources Conservation & Dev. Commn., 461 US 190.) Accordingly, neither this proceeding, nor the corpus of New York procedural and substantive landlord-tenant law is preempted by Federal law. Only if a specific provision of State law conflicts with the letter or purpose of the section 8 legislation, will it be superseded.
To determine whether there is a true conflict, the court must analyze the purpose of the Federal law and the effect upon it of the local law or procedure. (See, Hines v Davidowitz, 312 US 52; Baltimore Shippers & Receivers Assn. v Public Utils. Commn., 268 F Supp 836, affd 389 US 583.) Thus, local limitation of maximum rent has been applied to "section 8 housing. To permit an owner to increase a subsidized tenant’s share of the rent beyond the legal limit would subvert the very purpose of the Federal law: Rent subsidies are intended to decrease the tenant’s rent, not to increase the landlord’s return. (See, Wiener v New York City Hous. Auth., 106 Misc 2d 843.) Other substantive principles of local landlord-tenant law have also been applied to section 8 housing. (Matter of Fishel v New York City Conciliation & Appeals Bd., 123 Misc 2d 841 [lease renewal under rent stabilization]; Marine Terrace Assoc, v Zeimbekis, 122 Misc 2d 921 [Real Property Law § 235-f, the "Roomate Law”, permitting one additional unrelated occupant]; cf., University Towers Assocs. v Rimbert, NYLJ, Aug. 7, 1987, at 13, col 6 [Civ Ct, Kings County] [express contractual preemption of local rent limitations at one specific Federally assisted housing project].) A fortiori, a neutral State procedure should be applied to State litigation involving section 8 housing, if it adequately protects Federally recognized rights.[3]
*660 The only genuine Federal-State conflict at bar concerns respondent’s status. The New York licensee holdover statute (RPAPL 713) has both substantive and procedural aspects. It defines classes of occupants having no right to occupancy and permits their removal by special proceeding. To the extent that Federal law may give respondent a superior status, it supersedes the substantive aspects of RPAPL 713. The State statute, however, supplies an adequate procedural mechanism for determining her status. Accordingly, this special proceeding was properly brought, and should be decided, in this court.
EVIDENTIARY ISSUES
Respondent seeks to bar consideration of petitioner’s documentary evidence on this motion. If sustained, her objection would be dispositive of the instant summary judgment motion. Without the recertification forms of respondent’s mother and the affidavit of the owner’s employee, there would be no evidence contradicting that offered by respondent, and thus no factual dispute requiring a trial.
Respondent’s objections must be overruled. The recertification forms do contain hearsay, but they are not thereby rendered inadmissible. The hearsay rule seeks to exclude only unreliable evidence, not concededly genuine documents containing trustworthy statements of great probative value. (See, Fisch, New York Evidence § 765 [2d ed]; see also, Letendre v Hartford Acc. & Indent. Co., 21 NY2d 518; Weinstein, Probative Force of Hearsay, 46 Iowa L Rev 331.) Georgia Harvey not only signed the forms, but she knew, or should have known, that they were an important obligation of her tenancy. Each form bears an explicit certification, immediately above the signature, attesting to the truthfulness and completeness of its contents. Moreover, the 1985 form was notarized.[4]
The recertification forms should not be viewed as double hearsay. (Cf, Johnson v Lutz, 253 NY 124; see, Richardson, *661 Evidence §299 [Prince 10th ed]; Fisch, New York Evidence § 836 [2d ed].) The printed forms themselves can be considered the landlord’s business records (see, CPLR 4518) but contain no assertions sought to be admitted, and are thus not hearsay. Respondent’s mother’s answers are hearsay, but should be received as if they were admissions of a party. Statements by a person in privity with a party, who had been united in interest with the party, and through whom the party claims to have derived her status, are admissible if they are inconsistent with the party’s present position. (See, 4 Wigmore, Evidence § 1080 et seq. [Chadbourn rev]; Fisch, New York Evidence §§ 801, 836 [2d ed]; McCormick, Evidence §§ 262, 268 [Cleary 2d ed].)
The recertification forms could also be admitted as declarations against interest. (See, 5 Wigmore, Evidence §§ 1458, 1459, 1461 [3d ed]; Fisch, New York Evidence §§ 897, 898 [2d ed]; McCormick, Evidence §§ 277, 279 [Cleary 2d ed]; Richardson, Evidence §§ 259, 260 [Prince 10th ed].) Respondent’s mother is clearly unavailable to testify. Since she is alleged to have been a member of the protected family unit, her statements were adverse, when made, to the proprietary and pecuniary interest of the other group members in retaining the apartment. Since there is neither evidence that respondent’s public assistance receipts would have disqualified the family from section 8 assistance or increased its share of the rent, nor proof of other unreported income, it could not be said that the statements benefited respondent or her mother, rendering them excludable as self-serving when made. (Cf., Friedman v Sills, 112 AD2d 343.) Moreover, since overcrowding does not result in eviction without relocation to a more suitable apartment, the statements were adverse to the family’s natural interest in moving to larger quarters. Such statements might have also adversely affected the .children’s eligibility to attend the local public school.
Such statements are not barred by CPLR 4519, the Dead Man’s Statute. The Dead Man’s Statute bars an interested person from testifying at trial[5] about oral communications *662 with a deceased person, in support of a claim against the deceased, his estate or his successor. (Rubin v Kurzman, 436 F Supp 1044; Apple Corps v Adirondack Group, 124 Misc 2d 351.) It does not bar the introduction, by any party or the court, of an otherwise admissible statement of the deceased himself. The Dead Man’s Statute was intended to shield decedent’s estates from spurious claims incapable of defense: It should not be used as a sword to bar competent, genuine and trustworthy documentary evidence of the deceased.
Although the mother’s recertification forms are admissible; they should not be considered irrebuttable. Respondent derives her interest in the apartment, whatever it may be, from her mother’s tenancy. Yet, if respondent’s allegations are true, she and her children have independent Federal rights to continued occupancy. Respondent’s mother had no authority to alienate their rights, whether by design or inadvertance. Familial relationship alone does not create agency. (Parent Teacher Assn., Pub. School 72 v Manufacturers Hanover Trust Co., 138 Misc 2d 289 [husband and wife].) It would violate the spirit of the Federal law to preclude respondent from impreaching her mother’s statements or offering contradictory evidence. Indeed, neither section 8 nor its implementing regulations mandates that a tenant’s failure to list an occupant on the recertification form be accorded preclusive effect against a tenant’s survivors.[6] To the extent that lease provisions can be read to the contrary, they are in conflict with the intent of the Federal law.
Petitioner requests the court to invoke the unclean hands doctrine to bar respondent from disputing her mother’s statements. This equitable doctrine is inapplicable to an action at law. (See, Hasbro Bradley v Coopers & Lybrand, 128 AD2d 218 [1st Dept 1987].) Furthermore, there is no evidence that respondent knew the contents of her mother’s forms, thereby either effecting a constructive waiver or participating *663 in a deception. Neither is there any evidence that petitioner detrimentally relied on the mother’s representations, thereby giving rise to a possible estoppel.
Respondent also challenges the admissibility of the affidavit of petitioner’s employee, Dialis Romero. Romero claims that when she visited the apartment she saw only respondent’s mother and one bed. The affidavit does not disclose when, how often, or for how long Romero visited. Indeed, it cannot be determined if her visit(s) took place during the period in question. It is accordingly of little probative value. Since the recertification forms sufficiently show the existence of a triable factual question, admissibility of the Romero affidavit on relevance grounds is academic.
CONCLUSION
Respondent’s third defense, asserting status as a remaining member of the tenant family, is a valid defense and a sufficient basis for relief under Federal law. Given the contradictory evidence considered on this motion, the factual questions surrounding respondent’s status must be resolved at trial. If the preponderance of the evidence favors respondent’s claim of continuous, bona fide residence, she would then be entitled to judgment as a matter of law dismissing this proceeding.[7]
Respondent’s fourth defense, asserting status as a person *664 essential to a disabled person’s care and well-being, is not a valid defense here. Since such status ends upon the disabled person’s death, it would not alone have entitled respondent to remain in the apartment. Whether respondent had such status is therefore not material, and need not be determined either here or at trial.
Respondent’s motion for summary judgment is accordingly denied. Reverse partial summary judgment is granted to petitioner dismissing respondent’s fourth defense.
Settle Order.

. In the absence of controlling Federal interpretation, the court may seek guidance from analogous local standards if they are consistent with the Federal purpose, and do not limit rights secured by Federal law. (See, discussion, infra, at 657-660.) Thus, in Second Farms Neighborhood Hous. Dev. Fund Co. v Perez (Civ Ct, Bronx County 1986, index No. 47442/86, affd without opn App Term, 1st Dept 1988), the court applied the equivalent relationship standard used for succession under Rent Stabilization Code (9 NYCRR 2520 et seq.) to hold that the granddaughter of a section 8 (42 USC § 1437f) tenant was protected by the Federal law. (Rent Stabilization Code § 2520.6 [n].) The rent stabilization succession provisions have been subsequently invalidated, as unauthorized enactments by a regulatory agency acting beyond the scope of its legislative mandate.. (East Four-Forty Assocs. v Ewell, 138 Misc 2d 235 [App Term, 1st Dept]; see also, Two Assocs. v Brown, 127 AD2d 173.) It is immaterial here that the cited regulation has been held invalid, and that family members may lack succession rights under New York rent stabilization law without specific statutory or contractual protection. (Cf., Sullivan v Brevard Assocs., 66 NY2d 489.) The Second Farms court’s use of the Rent Stabilization Code definition must be regarded as analogy; the rights of section 8 occupants are independently rooted in Federal law. By parity of reasoning, the "remaining member of a tenant family” (42 USC § 1437a [b] [3] [C]) under section 8 can be analogized to a "family unit of the tenants” in whom succession rights are recognized under rent control. (See, Matter of Clarke v Morris, 46 Misc 2d 476, 477; Administrative Code of City of New York § 26-403 [e] [2] [i] [7]; Matter of Waitzman v McGoldrick, 20 Misc 2d 1085; 2 Rasch, New York Landlord and Tenant— Summary Proceedings § 1140, at 577 [2d ed].)

. Indeed, a real property action is the quintessential "local action”, where the situs provides jurisdictional basis, substantially influences choice of law, and determines venue.

. This approach is also conceptually consistent. Preemption and supremacy form a subset of conflict of laws theory. A court ordinarily uses its own procedure even when it applies the substantive law of another jurisdiction. (See generally, Restatement [Second] of Conflict of Laws §§ 122-143.) However, a forum procedure should not be applied if it frustrates the policy of the jurisdiction whose substantive law is controlling. (See, Currie, Federal Courts, at 620.) Accordingly, Federal courts trying diversity cases apply the appropriate State substantive law (Erie R. R. v Tompkins, 304 US 64) but follow Federal procedure. (Leflar, American Conflicts Law § 66.) Yet, it is a tacit corelate of the Erie doctrine that a Federal procedural rule should not be applied if it would vitiate State substantive law. (See, Klaxon Co. v *660 Stentor Elec. Mfg. Co., 313 US 487; Tribe, American Constitutional Law 380, n 12 [2d ed].) Conversely, a State court determining a dispute controlled by Federal substantive law may apply its own procedure only to the extent that it would not interfere with Federal rights. (See, Wilson v Garcia, 471 US 261 [Statute of Limitations].)

. Respondent’s sister, Elaine Watkins, who submitted an affidavit in support of respondent, notarized her mother’s 1985 recertification form which stated that the mother was the sole occupant of the apartment. Respondent does not claim that her mother was incompetent or that she did not understand the questionnaire.

. Evidence which would otherwise run afoul of the Dead Man’s Statute at trial has been held admissible to defeat a motion for summary judgment. (Phillips v Kantor & Co., 31 NY2d 307; see, 5 Weinstein-Korn-Miller, NY Civ Prac ¶ 4519.06; Siegel, NY Prac § 281, at 338.) The utility of this practice is questionable. (See, Phillips v Kantor & Co., supra, at 315-316 [dissenting opn, Fuld, Ch. J.].) Since a motion for summary judgment effectively serves as a substitute for trial, it is both intellectually inconsistent and judicially *662 uneconomical to apply different evidentiary tests. If the excludable item of evidence is the sine qua non for the finding of a triable factual issue, the subsequent trial will be an inevitable exercise in futility. The same result, i.e., judgment as a matter of law, could have been achieved at far less costs to the parties and the court. That, indeed, is precisely the purpose of summary judgment. (See, 4 Weinstein-Korn-Miller, NY Civ Prac ¶ 3212.12.)

. Respondent also claims, in her fifth defense, that petitioner knew of respondent’s continued occupancy after her mother’s death, and ratified her presence by continuing to accept the Government subsidy payments. Since respondent has not moved on this defense here, the court does not now consider it.

. The apparent overcrowding of the subject apartment does not preclude respondent from protection as a "remaining member of a tenant family” (42 USC § 1437a [b] [3] [C]). First, a local overcrowding ordinance (e.g., Administrative Code of City of New York § 27-2075 [formerly § D2633.03]) cannot deprive occupants of Federal rights. Second, the strong policies of section 8 (42 USC § 1437f) favoring continued assistance outweigh the inconvenience of temporary overcrowding. Since the law requires an owner to assist in locating alternate accommodations before moving to dispossess a protected family, overcrowding alone cannot result in immediate eviction. Third, the overcrowding provisions of both section 8 and the Administrative Code of the City of New York share a similar underlying purpose: the protection of tenants from substandard, frequently hazardous living conditions. (See, Kalimian v Olson, 130 Misc 2d 861.) They should thus be interpreted, where possible, to prevent an automatic forfeiture of the leasehold. It would be far worse for families to be made homeless, and for the elderly and infirm to be neglected, than for them to temporarily share cramped quarters until an alternative can be secured. Finally, if the evidence at trial were to reveal that petitioner or its agents knew, or should have known, of respondent’s occupancy, petitioner might well be estopped from raising the issue. (Kalimian v Olson, supra.) In any event, the petition does not set forth overcrowding as a ground for recovery of possession; accordingly, petitioner cannot use it here or at trial as a basis for relief.