Matter of Manhattan Plaza Assoc. v Department of Hous. Preserv. & Dev. of City of N.Y. (2004 NY Slip Op 24081)

Matter of Manhattan Plaza Assoc. v Department of Hous. Preserv. & Dev. of City of N.Y.

2004 NY Slip Op 24081 [3 Misc 3d 717]

February 20, 2004

Supreme Court, New York County,

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

As corrected through Tuesday, August 3, 2004

[*1]
In the Matter of Manhattan Plaza Associates, L.P., Petitioner,
v
Department of Housing Preservation and Development of the City of New York et al., Respondents.
Supreme Court, New York County, February 20, 2004

APPEARANCES OF COUNSEL

Lebensfeld Borker & Sussman LLP (Stephen Sussman of counsel), for petitioner. Michael A. Cardozo, Corporation Counsel, New York City (Deborah Rand of counsel), for respondents.

{**3 Misc 3d at 717} OPINION OF THE COURT

Rosalyn Richter, J. 
Petitioner Manhattan Plaza Associates, L.P., a limited-profit housing company formed under article II of the Private Housing{**3 Misc 3d at 718} Finance Law (Mitchell-Lama Law), is the owner of a housing development in midtown Manhattan. This housing development receives a "project based" section 8 rent subsidy under 42 USC § 1437.[FN1]

Respondent Department of Housing Preservation and Development of the City of New York (HPD) is the supervising agency of Manhattan Plaza and administers the section 8 program. Respondent Michael Madden is the son of Matilda and Joseph Madden, the former tenants of record in one of Manhattan Plaza's rental units, apartment 11C at 484 West 43rd Street. According to the petition, respondent Marilyn Madden is Michael's wife.[FN2]

The essential facts are not in dispute. On September 10, 2001, Matilda Madden died. Shortly thereafter, on October 8, 2001, Joseph Madden also died. Manhattan Plaza then served Michael and Marilyn Madden with notice that it would be seeking approval from HPD to evict them from the apartment. In December 2001 and February 2002, HPD held a hearing, pursuant to title 28 of the Rules of the City of New York, on Manhattan Plaza's request for approval of a certificate of eviction. On May 30, 2002, HPD Administrative Law Judge (ALJ) Helen Levy issued a decision denying Manhattan Plaza's request for a certificate of eviction and finding that Michael Madden was entitled to succession rights with respect to his parents' apartment. In this CPLR article 78 proceeding, Manhattan Plaza seeks a judgment annulling HPD's determination and directing the issuance of a [*2]certificate of eviction. For the reasons discussed herein, the court sustains HPD's decision and dismisses this proceeding.
In her decision, ALJ Levy explained that pursuant to HPD rules and regulations, in order to qualify for succession rights in the subject apartment, an occupant must either be approved from a waiting list, or must qualify as a family member who had co-occupied the apartment with the tenant of record for at least {**3 Misc 3d at 719}two years prior to the vacatur of that tenant.[FN3]

(See 28 RCNY 3-02 [p].) These regulations, at the time, provided that "[t]he failure of the family member who is seeking to succeed to possession of the apartment to appear on the appropriate income affidavits[FN4] creates a presumption that he or she did not reside in the apartment as a primary residence . . . The burden of proof is on said family member to show use of the apartment as his or her primary residence during the required period to be eligible to succeed to possession." (28 RCNY 3-02 [p] [former (3)].) ALJ Levy determined that the presumption created by this regulation could be overcome if the applicant could prove by other evidence that he in fact resided in the apartment for the requisite period.
ALJ Levy found that Matilda and Joseph Madden were the tenants of record pursuant to a March 1998 lease. Their son, Michael Madden, had never been recognized by Manhattan Plaza as an occupant of the apartment, and had never requested or been issued an access card. In addition, he never appeared on the annual certification of income and occupancy forms filed by his mother. Michael Madden's testimony at the hearing, however, revealed that he lived in the apartment for approximately three years with his parents, both of whom were very ill. Michael Madden stated that he was well known to the security guards in the building, and had gained entry to the building by either being "buzzed up" by his parents, or by using their access cards.
ALJ Levy noted that Michael Madden submitted documentary evidence supporting his claim that he occupied the apartment as his primary residence. This evidence included Michael Madden's medical bills and health insurance documentation from October 1999, November 1999 and February 2000, a November 1999 notice from the Human Resources Administration regarding food stamps, Department of Health notifications dated December 2000 and Joseph Madden's death certificate. All of these documents identify the subject apartment as Michael Madden's{**3 Misc 3d at 720} address. In addition, Michael Madden submitted a letter from his parents' doctor stating that Michael had lived with his parents and had taken care of them for the past two years. [FN5] ALJ Levy noted that Manhattan Plaza's only witness had no personal knowledge about the occupancy of the apartment.
ALJ Levy concluded that Michael Madden had met the burden of proving that he resided in the subject apartment as his primary residence for the two years before the death of his father. ALJ [*3]Levy based her decision on Michael Madden's unrebutted testimony and the "substantial documentation" establishing the subject apartment as his residence. ALJ Levy concluded that Michael Madden was entitled to succession of the apartment and denied Manhattan Plaza's request for a certificate of eviction.
In this proceeding, Manhattan Plaza does not attack any of the factual findings made by ALJ Levy. Thus, Manhattan Plaza does not contest that Michael Madden is the son of the deceased lawful tenants of the apartment, and that the apartment was his primary residence for at least two years before his father's death. Rather, Manhattan Plaza argues that ALJ Levy's decision was based on an error of law. Specifically, Manhattan Plaza maintains that under federal law, as interpreted by the Court of Appeals, the failure of Michael Madden to have appeared on the annual income and family composition affidavits is dispositive of his claim to succession, regardless of the fact that he actually lived in the apartment as his primary residence for the applicable period. Thus, Manhattan Plaza contends that the HPD rule (28 RCNY 3-02 [p] [former (3)]) allowing an occupant to rebut the presumption created by the failure to have been listed on the annual certification forms is violative of federal law.[FN6]
Manhattan Plaza rests its argument on the Court of Appeals decision in Matter of Evans v Franco (93 NY2d 823 [1999]). In that case, the petitioner brought a CPLR article 78 proceeding against the respondent New York City Housing Authority (NYCHA) seeking reinstatement of a section 8 tenant-based rent subsidy. Petitioner Louis Evans maintained that he had lived {**3 Misc 3d at 721}in a "quasi-marital" relationship with a woman who had received a section 8 subsidy for the apartment they purportedly shared. When the woman died, the NYCHA denied Evans' request for continuation of the section 8 subsidy based on the fact that the deceased tenant had never listed Evans on annual certification forms. The NYCHA did not provide Evans with a hearing on his eligibility to succeed to the subsidy. The trial court granted Evans's CPLR article 78 petition and directed the NYCHA to reinstate the subsidy, finding that Evans was entitled to succeed to the subsidy as a remaining nontraditional family member.[FN7](Evans v Franco, NYLJ, Sept. 25, 1996, at 22, col 2 [Sup Ct, NY County 1996].)
The Appellate Division reversed the decision of the trial court. In so doing, the appellate court affirmed the lower court's holding that the failure of a family member to be listed on annual certification forms is only one factor to be considered in determining whether that family member is entitled to succeed to the section 8 subsidy, but concluded that the lower court should have directed the NYCHA to hold a hearing. (Evans v Franco, 246 AD2d 377, 378 [1st Dept 1998].) The Court of Appeals reversed the Appellate Division and upheld the NYCHA's decision to [*4]deny Evans the section 8 subsidy without conducting a hearing. (Evans v Franco, 93 NY2d at 823.) The Court noted that federal regulations require section 8 tenants to request approval from the NYCHA to add a family member as an occupant of their apartment, and that no other person may reside in the unit.[FN8] The Court then held that "[g]iven the 13 unequivocal annual statements by the deceased that she lived in the apartment alone, there is no basis on this record to conclude that petitioner is a family member or that a hearing is necessary to confirm his status." (Evans v Franco, 93 NY2d at 825 [emphasis supplied].)
Manhattan Plaza maintains that Evans v Franco stands for the proposition that based on federal law, the failure of an applicant to have been listed on annual certification forms is dispositive on the issue of whether the applicant is entitled to succeed to a section 8 subsidy. This court does not read Evans so broadly. To begin, Evans is factually distinguishable. Evans{**3 Misc 3d at 722} dealt with whether or not an applicant was entitled to succeed to the subsidy as a nontraditional family member. Here, in contrast, there is no dispute that Michael Madden is the son of the deceased tenants-of-record. Manhattan Plaza raises no question regarding Michael Madden's status as a family member who would have qualified for succession rights under both federal and state law, had he been listed on the annual certification documents.
More importantly, there is nothing in the Evans decision that prohibits a state agency from holding a hearing and allowing an occupant to rebut the presumption created by the failure to have been listed on the certification forms. In Evans, the NYCHA, upon evidence that the deceased tenant had failed to list Evans on 13 annual certification forms, exercised its discretion not to conduct any further inquiry into the matter. The Court of Appeals merely upheld the right of that agency, in its discretion, to rely solely on the certification forms and to decline to hold a hearing. This is evident by the Court's statement that in light of the 13 certification forms, "there is no basis . . . to conclude that . . . a hearing is necessary to confirm [the petitioner's] status." (At 825 [emphasis supplied].) Clearly, Evans stands simply for the proposition that an agency cannot be required to conduct a hearing where the occupant is not listed on the certification forms, and that an agency may, consistent with federal law, rely solely on the certification forms. Critically, however, the Court did not state that it would be an error of law for an agency, in the exercise of its discretion, to hold a hearing on the issue, if it so chooses. Thus, the court concludes that Evans does not stand for the broad proposition urged by Manhattan Plaza, and provides no basis to overturn HPD's decision.
As a general principle, state law, not federal law, controls landlord-tenant issues such as succession rights in section 8 housing. (See, e.g., Morrisania II Assoc. v Harvey, 139 Misc 2d 651 [Civ Ct, Bronx County 1988] [analysis of section 8 makes clear that Congress did not intend to completely preempt the application of state landlord-tenant law to covered accommodations and their occupants].) In the absence of controlling federal regulations, the court looks to local standards if they are consistent with the federal purpose, and do not limit rights secured by federal law. (Morrisania II Assoc. v Harvey, 139 Misc 2d at 656 n 1.) "Only if a specific provision of State law conflicts with the letter or purpose of the section 8 legislation, will it be superseded." (Id. at 659.){**3 Misc 3d at 723}
Manhattan Plaza has not pointed to any federal law or regulations which state that an administering agency is prohibited from conducting a hearing on entitlement to continuation of a section 8 subsidy. Indeed, the federal regulations are completely silent as to succession rights. (See [*5]NSA N. Flatbush Assoc. v Mackie, 166 Misc 2d 446 [Civ Ct, Kings County 1995].) Nor do the regulations mandate any specific procedures with respect to the eviction of tenants or occupants in section 8 project-based units. Rather, the regulations give the supervising agency, in this case HPD, the authority to make rules and regulations with respect to carrying out the section 8 program. That is precisely what occurred here. The court concludes that the rule challenged herein was properly promulgated by HPD to administer the section 8 program, and is not in conflict with the letter or purpose of the section 8 laws and regulations.
Davidson 1992 Assoc. v Corbett (190 Misc 2d 813 [App Term, 1st Dept 2002]), upon which Manhattan Plaza relies, is easily distinguishable. In Davidson, a private landlord brought a holdover proceeding against Elizabeth Corbett, an occupant in a section 8 project-based apartment. Corbett had commenced occupancy in the apartment as a home health care worker, and was identified as a "live-in attendant" on annual certification forms. The Appellate Term upheld the lower court's judgment awarding possession to the landlord. The court held that since the Department of Housing and Urban Development's regulations explicitly do not recognize care attendants for continued occupancy purposes, and since no approval was sought or obtained for Corbett to remain in the apartment as an additional family member, she was not entitled to succeed to the section 8 subsidy. Thus, it is clear that an essential factor relied upon by the court was Corbett's status as a home health care worker. Since allowing such workers to succeed to possession would be inconsistent with the federal regulations, the court in Davidson properly denied succession rights. Here, in contrast, there is no dispute that the Maddens' son is a qualifying family member, under both state and federal law, for purposes of succession rights.[FN9]
Matter of Shuet Ying Gee v New York State Div. of Hous. & Community Renewal (276 AD2d 444 [1st Dept 2000]) does not require {**3 Misc 3d at 724}a contrary result. That case involved interpretation of Division of Housing and Community Renewal regulations which specifically require that an occupant seeking successor possession must be listed on annual income and occupancy affidavits. Here, HPD's rule does not contain such an absolute requirement. Furthermore, the occupant seeking possession in Shuet Ying Gee was admittedly not a member of the tenant's family and did not reside with the tenant-of-record for at least two years. Thus, this case is distinguishable.[FN10]
Finally, Manhattan Plaza argues that HPD's rule is inconsistent with the purposes and policies underlying the section 8 program because it will encourage fraudulent claims. However, the court is satisfied that any possible fraud could be uncovered at the hearing before the administrative agency. Furthermore, Manhattan Plaza is not raising any objection to the ALJ's factual findings that Michael Madden had resided in the apartment as his primary residence for at least two years. Nor [*6]is Manhattan Plaza claiming that any fraud occurred here.
Accordingly, it is ordered and adjudged that petitioner's CPLR article 78 petition is denied and the proceeding is dismissed.

Footnotes

Footnote 1: A "project-based" subsidy is associated with a specific dwelling unit and remains with the unit when the tenant vacates. In contrast, a "tenant-based" subsidy is a portable voucher which a tenant can use to pay rent on any apartment, within certain limits, in the United States. (Sunset Hous. Assoc. v Caban, 190 Misc 2d 343 [Civ Ct, Kings County 2001].)

Footnote 2: A Mental Health Law article 81 guardian has been appointed for Michael Madden and has informed the court that it adopts the position taken by HPD in this proceeding. Marilyn Madden has not submitted any papers in opposition to the petition.

Footnote 3: This time period is reduced to one year if the occupant is a senior citizen or disabled. Although ALJ Levy noted that Michael Madden had presented evidence that he has not worked since 1997 and has serious medical conditions, she did not find him to be permanently disabled because his application for Social Security disability benefits, although pending, had not been approved.

Footnote 4:Federal law and implementing regulations require HPD to periodically examine the income and family composition of participants in the section 8 program.

Footnote 5:ALJ Levy declined to give much weight to other letters submitted by Michael's brother, girlfriend and his friends.

Footnote 6:Petitioner's initial papers asked the court to invalidate this rule. However, in its reply papers, petitioner concedes that such relief is no longer necessary because the rule was since amended so as to remove the language creating a rebuttable presumption. Petitioner's arguments as to why HPD amended the rule are pure speculation and will not be considered by the court.

Footnote 7:Under federal regulations, "[a] 'family member' who has lived with a subsidized tenant for a significant period of time is entitled to succeed to the deceased tenant's Section 8 subsidy (if otherwise eligible) instead of starting as a new applicant at the bottom of the several-year waiting list for Section 8 payments." (Matter of Evans v Franco, 246 AD2d 377, 378 [1st Dept 1998].)

Footnote 8:Similar regulations exist for project-based section 8 subsidies.

Footnote 9:Further, as the court noted above with respect to Evans, there is no language in Davidson, which was a summary holdover proceeding, suggesting that an administrative agency could not choose to conduct a hearing before permitting an eviction of an occupant of section 8 housing.

Footnote 10:The court recognizes that Sunset Hous. Assoc. v Caban (190 Misc 2d 343 [Civ Ct, Kings County 2001]) reads Evans as requiring an occupant to be listed on the annual certification forms before being permitted to succeed to a section 8 project-based subsidy and possession. The court respectfully declines to adopt the reasoning articulated by the Sunset Housing court.