OPINION OF THE COURT
Marc Finkelstein, J.
Petitioner, NS A North Flatbush Associates, commenced this holdover proceeding to recover possession of the premises, 142 St. Paul’s Place, apartment IE (the Apartment), on the ground that the respondent, Lamont Mackie, occupies the Apartment pursuant to a license which expired upon the death of the tenant of record, Jacob Mackie. Respondent alleges that he is the deceased tenant’s son who resided in the Apartment for a pe *448 riod of some 20 months prior to his father’s death on September 26, 1993, and that he is therefore a "remaining family member” entitled to succession rights.
A trial of this matter was conducted on December 2, 1994, and January 12 and 27, February 27, and March 2, 3 and 14, 1995. Both sides were represented by counsel. During the course of trial, respondent withdrew his motion to dismiss made at the close of petitioner’s case as well as all of the numerous personal and subject matter jurisdictional defenses and affirmative defenses raised in his answer, except for his second affirmative defense.
As a result, the sole remaining issue for this court to determine is whether respondent has proven that he is a remaining family member entitled under Federal law to succeed to the section 8 tenancy rights of his deceased father. Both sides have submitted posttrial summations and memoranda of law on this issue.[1]
The Apartment is subject to the United States Department of Housing and Urban Development (HUD) section 8 Housing Assistance Program for Substantial Rehabilitation, pursuant to 42 USC §§ 1437a, 1437c, 1437f, 3535 (d) and 24 CFR part 881. The tenant of record, Jacob Mackie, was a participant of the section 8 Federal rent subsidy program of the United States Housing Act of 1937 (42 USC § 1437).
Under section 8 of the revised United States Housing Act of 1937, 42 USC § 1437 et seq., the "term 'families’ includes families consisting of a single person in the case of * * * (iv) the remaining member of a tenant family” (42 USC § 1437a [b] [3] [A]). The Federal regulations promulgated by HUD contain identical language. " 'Family’ includes but is not limited to * * * (b) The remaining member of a tenant family” (24 CFR 812.2 [1992]).
Both sides agree that the term "remaining member of a tenant family” is not further defined by statute or regulation. In addition, the Federal regulations are silent as to succession rights. (See, Church Home Assocs. v Bostick, NYLJ, Sept. 19, 1990, at 22, col 6 [Civ Ct, NY County].) Further, the Federally subsidized housing herein is not under direct control of local agencies such as the Division of Housing and Community Renewal (DHCR), the New York City Housing Authority or the *449 Department of Housing Preservation and. Development (DHPD).
Despite that the housing is not under local agency control, petitioner’s position is that in order to establish succession rights to this section 8 Apartment, "the Respondent bears the burden of proving that he resided in the subject premises as his primary residence for at least two (2) consecutive years immediately prior to the tenant of record’s death.” (Emphasis added.) In the absence of Federal law defining "remaining member of a tenant family” and governing succession rights, petitioner seeks to impose an automatic two-year requirement as found in analogous State and local laws.[2] Application of such a rule in this proceeding would preclude respondent from seeking protection from eviction as a remaining family member under Federal law since he himself argues that he resided with his father in the Apartment as his primary residence for only some 20 months prior to his father’s death.
Petitioner cites Morrisania II Assocs. v Harvey (139 Misc 2d 651 [Civ Ct, Bronx County 1988]), one of the leading cases in this area, as authority for its position. While the Morrisania court held that "Congress did not intend to completely preempt the application of State landlord-tenant law to covered accommodations and their occupants” (at 658), and that "[i]n the absence of controlling Federal interpretation, the court may seek guidance from analogous local standards,” the court was also careful to note that it could do so only "if [local standards] are consistent with the Federal purpose, and do not limit rights secured by Federal law. ” (Supra, at 656, n 1 [emphasis added].)
Thus, Morrisania (supra) does not provide authority for this court to apply the two-year coresidency requirements of State and local regulations to the respondent herein because to do so would limit his rights as a remaining family member secured under Federal law. As Morrisania held in the same footnote as cited above (at 656, n 1), "the rights of section 8 occupants are independently rooted in Federal law.” Also, to impose such a two-year rule would be contrary to the Federal purpose of section 8: "In sum, section 8 guarantees continued protection to every legitimate member of the family unit in occupancy. It recognizes that no such family member should suffer eviction, dislocation and homelessness upon the death of the tenant of *450 record. It is thus consistent with the original ameliorative purpose of the United States Housing Act of 1937, the comprehensive legislation of which section 8 forms a part.” (Morrisania II Assocs. v Harvey, 139 Misc 2d, at 657 [citation omitted].)
Nothing in the Federal law addresses the issue of precisely how long a family member must coreside with the tenant of record so as to establish rights as a remaining family member. Petitioner has not cited any section 8 or related case in which a two-year coresidency rule has been imposed. Rather than creating a two-year or any other "bright line” duration of coresidency requirement, the courts have decided each case on an individual basis where duration of residency is a factor. In fact, Morrisania (supra, at 656) itself does not establish any set time duration: " '[Remaining member of a tenant family’ * * * should be defined according to the ordinary and natural meaning of its own words, as a person who had actually been in occupancy as a part of the family unit at the time of the named tenant’s death. Its use recognizes an underlying statutory assumption: all family members have occupancy rights which are not terminated by the death of any member.” The Morrisania court noted, however, that "one who assumed occupancy just before the tenant’s death, with no purpose other than that of succeeding to the tenancy, is not so protected.” (Morrisania II Assocs. v Harvey, 139 Misc 2d, at 656.)
Not only have courts not established any "bright line” duration of coresidency test, but numerous section 8 succession rights cases in addition to Morrisania (supra) have concluded that a coresidency period of less than two years is deemed sufficient to establish remaining family member status. Applicable case law requires that in order for family members to gain succession rights, they must establish a bona fide co-occupancy of suitable duration.[3] (Church Home Assocs. v Bostick, supra, at 22, col 6 ["more than a short period of time” sufficient]; Academy Gardens Assocs. v Rivers, index No. 82259/ 85, Civ Ct, Bronx County, June 4, 1987 [approximately one year sufficient]; Judge Gilbert Ramirez Hous. Dev. Fund Co. v Sutton, index No. 45105/86, Civ Ct, Bronx County, June 11, *451 1986 [18 months sufficient]; Venango Assocs. v Sebrell, index No. 86-12-02-00162, Philadelphia County Mun Ct, Pa, Apr. 28, 1987 [eight months sufficient].)
At trial, respondent offered substantial documentary evidence and testimony in support of his contention that as a result of his bona fide co-occupancy he is entitled to succeed to the Apartment. Lamont Mackie testified that he is the son of the deceased tenant of record, and produced a certified copy of his birth certificate in support of this claim. He testified that before his incarceration in January 1990, and before his father took possession of the Apartment in June 1990, he and his father lived together at a different address. Respondent testified that he was incarcerated from January 1990 to early February 1992 when he was released on parole to the Apartment to reside with his father. This testimony was confirmed by certified copies of Department of Parole (DOP) records.[4]
DOP and Department of Labor (DOL) records indicate that respondent was employed from March 1992 (shortly after his release to the Apartment) to November 1992, and from April to May 1993. DOL records indicate that respondent received unemployment benefits at the Apartment from November 1992 to April 1993, and from August to December 1993. Department of Social Services (DSS) records indicate that respondent received public assistance benefits at the Apartment for a short time in early 1992, as well as from May 1993 until the date of trial.
Respondent offered evidence and testimony that at least once monthly surprise home visits were made by DOP personnel who verified respondent’s residence at the Apartment. Parole Officer Mark Parker testified that in compliance with DOP policy these home visits were made from February 1992 to May 1993 and from August 1993 to November 1993. Officer Parker testified and records show that he personally made at least nine unannounced visits to the Apartment between June 1992 and February 1993 for the express purpose of verifying respondent’s residence. Officer Parker further testified that he made home visits approximately once a month between Febru *452 ary and May 1993, and between August 1993 and November 1993. On virtually each occasion Officer Parker observed respondent in the Apartment and he always verified respondent’s residence at the Apartment. In fact, Officer Parker stated that on a number of these visits, which took place very early in the morning, he awakened respondent from bed and talked with him as he dressed for work. Officer Parker also regularly verified respondent’s employment and otherwise monitored his parole.[5]
Respondent testified that he violated his parole and was re-incarcerated from mid-May to early August 1993, after which he returned to the Apartment. The tenant of record died on September 26, 1993. The instant action was commenced in June 1994.
In support of its case, petitioner offered the following at trial relative to the February 1992 to September 1993 period in question: (1) two section 8 recertification forms for 1992 and 1993 which do not list respondent as a resident of the Apartment; and (2) the testimony of two employees — petitioner’s agent and the building superintendent — both of whom stated that they had never seen respondent around the building prior to the death of the tenant of record.
The failure to list a family member on consecutive annual recertification forms does not automatically preclude that relative from succeeding to the section 8 apartment. It is not irrebuttable evidence which forecloses a tenant’s survivor from claiming succession rights. (Rivlin Houses Assocs. v Estate of Brown, NYLJ, Sept. 20, 1991, at 21, col 2 [App Term, 1st Dept], supra.) Rather, it is but one factor to be considered when examining whether a remaining family member is entitled to succession rights. (See also, Morrisania II Assocs. v Harvey, supra; Church Home Assocs. v Bostick, supra.)
The failure of a family member to be listed on income affidavits submitted by the tenant of record was addressed in Beresford Trevor Bannister v Machetti & Riverside Park Community Stage I (Sup Ct, NY County, Nardelli, J., Sept. 17, 1990, index No. 41028/90). In a situation of dual HUD/DHPD regulation (not alleged to be the case herein) the court found that the Federal Government had not preempted the area of succession *453 rights so as to bar DHPD’s regulations, and HUD regulations provide that a tenant and landlord must act according to State or local law. However, the court specifically held that rules promulgated by DHPD may not be used to create an irrebuttable presumption, and are for the purpose of "aiding” the trier of fact in its determination of parties deserving a lease as opposed to "interlopers” taking occupancy solely for the purpose of acquiring tenancy rights. (Supra, slip opn, at 6.)
In fact, no one factor is completely determinative with regard to whether a relative may succeed to the rights of a section 8 tenant when that tenant permanently vacates. What is dispositive is whether the respondent can make a showing, under the totality of the circumstances, that he lived with the deceased section 8 tenant as a family unit, and that it was for more than a short period of time. (See, Morrisania II Assocs. v Harvey, supra [holding that it was an issue of fact to be determined at trial whether daughter of deceased section 8 tenant was entitled to Federal remaining family member status based upon continuous bona fide residence]; Church Home Assocs. v Bostick, supra [holding that factors to be considered in whether or not niece of departed section 8 tenant living in HUD subsidized housing was entitled to succession rights included: (1) whether the two individuals were living together as a family unit; and (2) the length of time of the co-occupancy].)
The testimony of the petitioner’s two witnesses was inconclusive. They are employees of petitioner. Their testimony was vague and unconvincing. Although the agent indicated she had not seen respondent around the building prior to his father’s death, she did not testify that she had ever been inside the Apartment. The superintendent could not even recall the year when respondent’s father died nor when he visited the Apartment to do repairs. He did not remember any of the other tenants of the building or even what they look like.
Whether or not petitioner’s two witnesses saw respondent in or around the building during their daytime working hours is certainly not dispositive of whether respondent actually resided in the Apartment. Respondent presented substantial evidence that he moved into the Apartment in February 1992 and resided there with his father until he died in September 1993.
DOP, DOL and DSS records confirm the following over this 20-month period: From before his February 3, 1992 release date, respondent actively sought employment. For the first month after release he received public assistance (with his address in DSS records being the Apartment and his receiving *454 benefits at the Apartment). Over the next 19 months, he worked for approximately 10 months with Dunn & Sons performing maintenance work at the Port Authority Terminal in Manhattan. For about five of the other months, respondent received unemployment benefits at the Apartment (requiring him to search for work and report regularly to the unemployment office). For almost three months respondent was reincarcerated.[6] For the last period of almost two months (up to the time his father died), he again received public assistance benefits at the Apartment.
While the agent and superintendent may not have seen him in or around the building during the day, it is clear that over the 20 months (except for the almost three months of reincarceration), respondent’s parole officers conducted surprise home visits on at least a monthly basis (often in the early morning hours) and consistently verified his residence at the Apartment.
As opposed to petitioner’s two employees, respondent’s witness, Parole Officer Parker, is a disinterested government employee. He testified with substantial detail as to the number of times he had personally observed the respondent at the Apartment. It was his job, and that of the other parole officers, to make surprise visits and otherwise monitor that respondent was abiding by the conditions of his release; including that he was actually residing in the subject Apartment with his father.
After hearing all the testimony, reading the documentary evidence and reviewing the posttrial summations and memoranda of law, this court finds that the overwhelming preponderance of the evidence favors respondent. The testimony and documentary evidence offered by the respondent presents clear and convincing proof that he established his primary residence at the Apartment and that he resided there with his father, as a family unit, for a sufficient duration of some 20 months.[7] As *455 a result thereof, respondent is entitled to succeed to his father’s section 8 tenancy rights.
Accordingly, the petition herein is dismissed, with prejudice.

. The court finds the "background” section of respondent’s posttrial summation and memorandum of law to be a scrupulously accurate rendition of that which transpired in this Part from the date the matter was assigned hereto on August 29, 1994 until the submission of briefs on April 7, 1995.

. Rent Stabilization Code (9 NYCRR) § 2523.5 (for rent-stabilized apartments), 9 NYCRR 2204.6 (d) (1) (for rent-controlled apartments), 28 RCNY 3-02 (p) (for DHPD governed Mitchell-Lama apartments), and 9 NYCRR 1727-8.3 (for DHCR directed Mitchell-Lama apartments).

. 28 RCNY 3-02 (p) requires a two-year period of bona fide co-occupancy. However, the applicable case law has been flexible when applying this standard and has placed more emphasis on the bona tides of the co-occupancy as opposed to an arbitrary time period. (See, Rivlin Houses Assocs. v Estate of Brown, NYLJ, Sept. 20, 1991, at 21, col 2 [App Term, 1st Dept] [19 months’ co-occupancy sufficient].)

. DOP conducted an initial investigation and subsequent supervision in regard to respondent and his conditions of parole. The officer making the initial visit to the prospective residence for parole (the Apartment) noted: "The subject’s father relates well with the subject and has no problem accepting him * * * The apartment is a studio and the subject will sleep on a pull-out which is in the studio * * * Subject is presently reporting to this Parole Officer as director [sic] and is diligently (verified) seeking employment * * * The apartment is neat and well kept.”

. Respondent’s documentary evidence consists of records kept by DOP, DSS, and DOL — all independent, disinterested governmental agencies. All records indicate respondent’s address and phone number at the subject premises. These records are entirely internally consistent as well as being consistent with the trial testimony of Parole Officer Parker and respondent.

. The time spent away from the Apartment due to reincarceration is not considered an interruption in respondent’s coresidence with his father as it was pursuant to court order and because respondent did not change his primary residence as a result thereof.

. It should be noted that nowhere in the extensive supervisory records of the DOP, or in the DSS or DOL records, is there any indication whatsoever of any other address for respondent during the period in question, no less any indication of a primary residence elsewhere. Nor did any testimony credibly indicate any other residence for respondent.