Churchill House, L.P. v Marshall (2025 NY Slip Op 50966(U))

[*1]

Churchill House, L.P. v Marshall

2025 NY Slip Op 50966(U)

Decided on June 10, 2025

Civil Court Of The City Of New York, New York County

Ortiz, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on June 10, 2025
Civil Court of the City of New York, New York County

Churchill House, L.P., Petitioner(s)-Landlord,

against
Jacqueline Marshall, Respondent-Occupant, John Doe and Jane Doe, Respondents-Occupants.

Index No. L&T 311139/24

Petitioner was represented by Marc Sanzeri, Esq. of Gutman Mintz et. al at 377 813 Jericho Turnpike, New Hyde Park, NY 11040; (516) 775-7007
Respondent, Jacqueline Marshall appeared pro se.

Frances Ortiz, J.

This is a licensee holdover proceeding seeking possession of 200 West 147th Street, apt. 8D, New York, NY 10039 ("the subject premises") from Respondent, occupant, Jacqueline Marshall. Petitioner is Churchill House, L.P. According to paragraph nine of the petition, the premises is " . . . subject to 236E2 and Use Agreement [FN1]
with the Department of Housing and Urban Development. The rents for the subject building are set by the Department of Housing and Urban Development pursuant to Section 236E2 [FN2]
of the National Housing Act. The premises [*2]is subject to the Federal Low Income Housing Tax Credit Program pursuant to a Regulatory Agreement with the Housing Development Corporation (HDC)."
Here, the 30 Day Notice to Vacate indicates that Respondent, Jacqueline Marshall entered into possession of the subject premises pursuant to a license granted to her by the preceding tenant of record, Jackie Gaston, who is deceased and that the death of Jackie Gaston terminated any license granted to her or others by operation of law, and that Jacqueline Marshalls' occupancy of the subject premises continues without the consent or permission of the owner, and that she does not have any independent rights to the subject premises.
Jacqueline Marshall appeared and per consent decision and order dated December 9, 2024 her original general denial answer was amended to reflect general denial and succession rights to the tenancy of Jackie Gaston. Her answer did not indicate her relationship to Jackie Gaston. However, the answer indicated co-residency with Jackie Gaston and that she shared financial responsibilities and maintenance of the subject premises as her primary residence with Jackie Gaston. (NYSCEF Doc. 10).
On April 2, 2025, and April 7, 2025 this Court conducted a trial on the matter. Petitioner appeared by counsel and Respondent, Jacqueline Marshall appeared pro se. Petitioner called one witness, Lisa Hunt. Jacqueline Marshall called herself as a witness and three other witnesses — Erica Marshall, Eric Gaston and Linda Paul.
DOCUMENTARY EVIDENCE
Petitioner was the only party who offered documentary evidence. The following documents were admitted in evidence on behalf of Petitioner: P1 - attorney certified deed; P2 - attorney certified regulatory agreement; P3 - attorney certified multiple dwelling registration; P4 - original lease of Jackie Gaston — "Model Lease for Subsidized Programs" and judicial notice of "Affidavit of Unavailability with Request for Adjournment" under LT # 321702/23 sworn to by Jacqueline Marshall.

TESTIMONY
Lisa Hunt testified that she is employed by Webb Brooker, Inc. who is the managing agent of the subject building; that she is the chief operating officer of Webb Brooker; that she oversees leasing, maintenance and staff issues; that she has been employed by Webb Brooker for 10 years; that she is familiar with Churchill LP (the Petitioner); that she is at the building site every day; that the tenant of record of the subject premises was Jackie Gaston; that P-4 in Evidence is the original lease of Jackie Gaston; that the head of a household must recertify annually pursuant to HUD regulations; that the HUD Form 50059 (Owner's Certification of Compliance with HUD's Tenant Eligibility and Rent Procedures) is where the head of household must list occupants on that form; that under P-4 in Evidence, the head of household -Jackie Gaston- only listed himself as a member of the household; that he reported his Social Security and SSI income; that Mr. Gaston's rent share was $229; that the rent subsidy was $2,638 monthly effective December 1, 2022; that in her ten years as an employee she came in contact with the tenant of record; that her office is around the corner from the subject building; that Respondent - Jacqueline Marshall - on the on the record stipulated that Jackie Gaston passed [*3]away on October 17, 2023; that there were no further leases entered into for the apartment thereafter; that the original tenant record was Mrs. Emily Gaston (Mr. Gaston's mother) and then she added Jackie Gaston to the recertification; that then Emily Gaston passed away on March 17, 2020; that she met two of Jackie Gaston's sons who came to the office to help him with the recertification papers; that Jackie Gaston tried to add Johnny Gaston to the lease in 2021; that Johnny Gaston did not get added to the lease because Johnny Gaston passed away; that from November 2023 through April 2025 no rent or use in occupancy was paid; and that there is $51,606 in use and occupancy owed.
On cross examination Ms. Hunt indicated that there was no reason for denying Johnny Gaston to be part of the lease; that he did not provide documents; that he was murdered; that HUD does not prevent a landlord from adding an occupant to the household account if the account is in arrears; that if someone needs to be added to the lease, you need to provide a birth certificate or Social Security number, proof of income such as pay stubs and bank accounts or school letter; that the head of household must be able to write a notarized letter to management requesting to add a member to the household; that Mr. Gaston did not go too far with adding his son and that Petitioner was never asked to add Jacqueline Marshall to the household.
Lastly, the court took judicial notice of a stipulation of settlement dated August 28, 2024 in an alleged illegal lockout - LT# 1512/24 - Jacqueline Marshall v. Churchill House, L.P. - and non-payment proceeding - LT# 300312 /22 — Churchill House L.P. v Jackie Gaston.
Petition rested and sought a final judgment of possession against Jacqueline Marshall and a money judgment of $51,606 in use and occupancy.
Jacqueline Marshall testified that she moved into the subject premises in December 2023 but then she corrected her testimony to reflect that in December 2022 she moved in with her father Jackie Gaston to the subject premises; that her father died in October of 2023; that Jackie Gaston is her biological father; that "Gaston" is not her last name but it is her father's last name; that her mother's name is Erica Marshall; that she has other siblings - the youngest was Johnny Gaston who is now deceased, Andre Gaston, Eric Gaston; that there are four children; that she is the third child born after Eric Gaston; that Johnny Gaston was murdered on December 15, 2022; that she moved into the subject premises after the murder of Johnny to help her father with the rent and to help care for him; that she moved into the subject premises after December 15, 2022 and before December 25, 2022; that she lived with her father 10 1/2 months before he died; that her birth certificate does not have her father's name on it because he was incarcerated and he could not sign the birth certificate; that the portion of the birth certificate that says father is blank; that she did not know about the January 2023 lease her father's signed; that P4 in Evidence (the model lease) was not given to her; that she never saw the lease; that Ms. Hunt told her and her father that he would not be able to add anyone to his lease because he had a balance; and that Ms. Hunt said that he could not add anyone to the lease.
On cross examination Ms. Marshall testified that she moved into the subject premises around Christmas 2022; that before that she lived in the Bronx with her mother; the Court also took judicial notice of LT Index # 321702/ 23 - Churchill House L.P. v Jackie Gaston, John Doe, and Jane Doe — and an Affidavit of Unavailability signed by Jacqueline Marshall dated November 17, 2023 saying that "Jackie Gaston is in the hospital with pancreatic cancer;" however, she admitted he had already died on October 17, 2023.
On re-direct Ms. Marshall testified that it was hard for her to accept that her father was dead; that her father weighed 98 pounds during his last days, and she was not ready to tell [*4]everyone that he had died; that it was a lot for her and her family; and that she completed that Affidavit of Unavailability to try to get another adjournment.
Erica Marshall testified that she is Respondent's mother; that Jackie Gaston is the father of her children; that she had five children with Jackie Gaston - Andre Gaston, Eric Gaston, Jacqueline Marshall, Johnny Gaston and Paul Gaston -; that Jackie Gaston was incarcerated in 1997 thereafter she corrected her testimony to say that Jackie Gaston was incarcerated in 1987; that Jacqueline Marshall's date of birth was XX/XX/1987; that because he was incarcerated he could not sign the birth certificate; that Jacqueline was their third child; that Jackie Gaston was back and forth in jail; that she got pregnant in 1990 and she was 28 years old; that when Mr. Gaston was sick Jacqueline was taking her care of him; that before then Jacqueline lived with her in the Bronx; that Jacqueline then moved in with her father but two of her sons got shot; that Johnny died and Paul was shot too and now has a permanent colostomy bag.
On cross examination - Erica Marshall - testified that in 1986 she became pregnant with Jacqueline and that Jacqueline was born in 1987; that her granddaughter who is Jacqueline's daughter was going to school in the Bronx; that she does not know which school her granddaughter attends but then she remembered she was homeschooled; and that her granddaughter — Jandor - is now 15 years old. On redirect - she discussed how Ms. Hunt did not let Jackie on the lease because of the arrears. 
Eric Gaston testified that he's not in a stable home environment and was unable to provide the Court an address; that he is the older brother of Jacqueline; that he is the second child of Erica Marshall; that he is the son of Jackie Gaston; and that he is not aware of December 15, 2022 occurrences.
Linda Paul testified that she resides in apt. 5C at the subject building; that she met Jacqueline Marshall's grandmother in the late 1990s; that she met Jacqueline Marshall's father (AKA Jackie Gaston) in the early 2000's; that Jackie Gaston lived on the 12th floor then with his father and then moved to the 8th floor with his mother; and that the rental office of the building is located around the block from the building.

DISCUSSION
When a tenant of a project-based Section 8 apartment dies or moves out of the apartment, a remaining family member may have a right to succeed to that apartment. Succession to a project-based Section 8 tenancy is based on the United States Housing Act and its implementing regulations. 42 USC § 1437a[b][3][a] defines family as including the remaining member of a tenant family. As such, that framework broadly recognizes the entire family as the tenant. Occupancy by additional family members of the tenant of record require the approval of the owner. Bronx 361 Realty, L.L.C. v. Quinones, 26 Misc 3d 1231(A), 907 N.Y.S.2d 98 (Civ. Ct. Bronx Cty 2010). Additionally, the Department of Housing and Urban Development ("HUD") Handbook — "Occupancy Requirements of Subsidized Multifamily Housing Programs (4350.3)" and Section 3-16 entitled "Determining the Eligibility of a Remaining Member of a Tenant Family" requires a family member to be a party to the lease, when the family member leaves the unit. If the family member is not listed as an occupant on the household composition and income certifications, that family member may not have a right to succeed to the tenancy.
Conversely, appellate courts have held that the absence of a family member's name on the household composition statements is not fatal to his or her succession claim. Los Tres [*5]Unidos Assocs., LP. v. Colon,[FN3]
45 Misc 3d 129(A), 3 N.Y.S.3d 285 (AT 1st Dep't 2014); 2013 Amsterdam Ave. Hous. Assocs. v. Est. of Wells, 10 Misc 3d 142(A), 814 N.Y.S.2d 893 (AT 1st Dep't 2006). Rather, it is one factor to be considered in a succession rights claim. NSA North Flatbush Assocs. v. Mackie, 166 Misc 2d 446 (Civ. Ct. Kings Cty 1995). Further, the remaining family member is permitted at trial to present evidence to rebut the presumption of non-residency reflected by his or her absence on the family composition.
Lastly, the remaining family member can also establish a bona-fide co-occupancy with the tenant of record at the time of the tenant of record's death or permanent vacatur. Murphy v. New York State Div. of Hous. & Cmty. Renewal, 21 NY3d 649 (2013). The federal law does not address the issue of precisely how long a family member must co-reside with the tenant of record so as to establish rights as a remaining family member. NSA North Flatbush Assocs. v. Mackie, supra. The length of a remaining family member's co- occupancy with the tenant of record supports and legitimizes the occupancy as a member of the family unit, but it is not dispositive of that central issue. Bronx 361 Realty, L.L.C. v. Quinones, supra.
Here, the subject premises is subject to the Department of Housing and Urban Development ("HUD") Section 8 regulations, the Federal Low Income Housing Tax Credit Program pursuant to a Regulatory Agreement with the Housing Development Corporation ("HDC") and the rents are set by HUD. Simply stated, the subject premises is not subject to state or local rent regulation. Accordingly, the bright-line test for one- or two-years of co-habitation for a remaining family member to establish succession rights, under state rent control or rent stabilization law is not applicable. 
As such, the Court turns to whether Respondent at trial proved her defense of succession. It is undisputed that Respondent — Jacqueline Marshall - does not appear as a tenant or occupant on the Model Lease for Subsidized Programs (P-4 in Evidence) for the subject premises. The Model Lease dated January 18, 2023 is signed only by Jackie Gaston. Additionally, the Attachment L to the Model Lease merely has Jackie Gaston listed on the household composition as head of household. There is no other named occupant listed on the Tenant Income Certification that was also signed on January 18, 2023 by Jackie Gaston. The emergency contact sheet attached to the Model Lease also signed and dated on January 18, 2023 by Jackie Gaston lists "Cynthia Cretchlow" as Mr. Gaston's emergency contact. Ms. Cretchlow's relationship to Mr. Gaston was described as "girlfriend" and reason for contact was "emergency, unable to contact you, assist with recertification, change in lease terms, and change in house rules."
Jacqueline Marshall testified that she moved into the subject premises after December 15, 2022 and before December 25, 2022 which was after the murder of her brother, Johnny. She lived at the subject premises with her father 10 1/2 months, before he died on October 17, 2023. She did not offer in evidence any documentary evidence establishing her biological relationship to the tenant of record, Jackie Gaston. For example, there was no birth certificate offered in evidence to establish that Ms. Marshall was the daughter of Jackie Gaston. Jacqueline Marshall and her mother, Erica Marshall admitted that her birth certificate does not have Jackie Gaston's [*6]name on it as her father. He was incarcerated and could not sign the birth certificate. The portion of her birth certificate that says father is blank. As such, Jacqueline Marshall's last name is not "Gaston." She has her mother's last name. Ms. Marshall did offer credible testimonial evidence from her mother and brother corroborating that Jackie Gaston was her biological father.
Although Ms. Marshall could have credibly established that she was the biological daughter of Jackie Gaston and therefore a remaining family member of Jackie Gaston, she has not established that she had approval from Petitioner to occupy the subject premises. Her name does not appear on the recertification documents and model lease signed by Jackie Gaston on January 18, 2023 which would confirm Petitioner's approval of her occupancy.
Ms. Marshall at trial did not present evidence to rebut the presumption of non-residency reflected by the absence of her name on the family composition. She did not offer one scintilla of documentary evidence establishing her bona fide co-occupancy of the subject premises with Jackie Gaston. There were no employment records, pay stubs, school records, medical insurance, voter registration, tax returns, driver's license, utility bills listing the subject premises. Jackie Gaston on January 18, 2023, about a month after Jacqueline Marshall purportedly moved into the subject premises chose to add his girlfriend as his emergency contact on his lease addendum not Jacqueline Marshall. Moreover, he authorized his girlfriend to assist him with recertification, change in lease terms, and change in house rules and not Jacqueline Marshall.
This Court recognizes that the lack of documentary does not necessarily undermine a succession rights claim where the totality of the testimonial evidence establishes the succession claim, especially under circumstances where the parties have limited financial resources. Arnie Realty Corp. v. Torres, 294 AD2d 193 (1st Dep't 2002); Roberts Ave. Assocs. v. Sullivan, 2003 NY Slip Op. 51091(U), 2003 WL 21730092 (AT 1st Dep't 2003). However, Jacqueline Marshall's testimony for the most part lacked credibility and consistency. Most disturbing to this Court was the Affidavit of Unavailability signed by her dated November 17, 2023 saying that "Jackie Gaston is in the hospital with pancreatic cancer;" however, she admitted he had already died one month before on October 17, 2023.
In addition, the Court finds incredible Jacqueline Marshall's claim that Ms. Hunt told her and her father that he would not be able to add anyone to his lease because he had a rent balance. Ms. Hunt credibly testified that she considered adding Johnny Gaston to Jackie Gaston's household composition, but he died before doing so and that Johnny had not submitted the required paperwork. Ms. Hunt also credibly testified that rent arrears on an account do not prevent a head of household from adding occupants to the household composition.
Assuming this Court had found Jacqueline Marshall fully credible on the sole basis of the testimonial evidence, a 10 ½ month period (mid - December 2022 to October 17, 2023) of co-occupancy at the subject premises with tenant of record - Jackie Gaston - is not a suitable duration to establish a bona fide claim of co-occupancy. This short time frame of occupancy does not legitimize her co-occupancy with Jackie Gaston as a member of the family unit. Further, comparable state law requires at least two years of co-occupancy to establish succession rights, under these circumstances.
Additionally, the testimony of disinterested witness, Linda Paul, did not corroborate Jacqueline Marshall's claim of a bona fide co-occupancy of the subject premises with Jackie Gaston. Similarly, the testimony of Eric Gaston provided no probative value to Jacqueline Marshall's succession defense.
After the credible testimony of Lisa Hunt, the admitted documentary evidence, the [*7]contents of the court file, the Petitioner has proven the prima facie elements of the petition. Specifically, Petitioner proved that it is the owner of the subject premises pursuant to a deed and regulatory agreement, that Respondent's license was properly terminated by 30 day notice to vacate, that the subject premises is not subject to rent regulation, that Respondent continues to holdover on the subject premises and that there was from November 2023 through April 2025 no rent or use in occupancy paid; and that there is $51,606 in use and occupancy owed.
Accordingly, the Petitioner is awarded a final judgment of possession against Respondent, Jacqueline Marshall, with issuance of the warrant of eviction forthwith and execution of the warrant of eviction is stayed to July 15, 2025 for Respondent to vacate with dignity. The earliest execution date is July 16, 2025. Additionally, Petitioner is awarded a money judgment in the amount of $51,606 for unpaid use and occupancy against Respondent, Jacqueline Marshall.
ORDERED: The clerk is to enter a final judgment of possession against Respondent, Jacqueline Marshall with issuance of the warrant of eviction forthwith and execution of the warrant of eviction stayed to July 15, 2025. The earliest execution date is July 16, 2025.
And further
ORDERED: The clerk is to enter a money judgment in the amount of $51,606 against Respondent, Jacqueline Marshall.
And further
ORDERED: The Petitioner is to forthwith file and serve a copy of this after trial decision and order with Notice of Entry on Respondent, Jacqueline Marshall.
This is the decision and order of this court. The parties are directed to pick up their exhibits, if any, within thirty days or they will either be sent to the parties or destroyed at the Court's discretion in compliance with DRP-185. Copies of this decision will be uploaded to NYSCEF, mailed by regular mail to Respondent, Jacqueline Marshall and emailed to Jacqueline Marshall to [email protected].
Dated: June 10, 2025
New York, NY
Judge, Civil/Housing Court
Frances Ortiz

Footnotes

Footnote 1:According to the Regulatory Agreement (P- 2 in Evidence), Petitioner is a mortgagor who entered into a 236E(2) Use Agreement (the "HUD Use Agreement") with the Secretary of the United States Department of Housing and Urban Development ("HUD") in connection with HUD's Section 236 Interest Reduction Subsidy Program.

Footnote 2:The Section 236 Program was enacted in 1968 as part of the Housing and Urban Development Act of 1968. 12 U.S.C.A. § 1715z-1. Under the Program, a private sponsor of a multifamily housing development project obtains an FHA-insured market rate mortgage from a private lender and pays 1% interest on the mortgage. HUD pays the lender the difference in interest between the 1% and the market rate. The owner charges rents equal to 30% of adjusted household income, or the basic rent, whichever is higher, but not greater than the market rent. Other federal housing programs, in general—Section 236 mortgage assistance payments, Residential Landlord Tenant L. in NY § 5:189

Footnote 3:Son of the tenant of record in a project-based Section 8 apartment was entitled to continuation of the "project-based" Section 8 subsidy, under the circumstances, where he resided with his mother at the apartment for more than a decade preceding his mother's death but was not listed on family composition statements.